**In re SUN WEST
DISTRIBUTORS, INC., Debtor.**

**SUN WEST DISTRIBUTORS, INC., a California corporation, also known as Southwest Solar Distributors; Socalso, Inc., a California corporation; and Richard D. Mangiarelli, Plaintiffs,**

**v.**

**GRUMMAN ENERGY SYSTEMS COMPANY, a New York corporation, Defendants.**

Bankruptcy No. 84–02122–LM11.
Adv. No. C86–0345–LM11.

United States Bankruptcy Court,
S.D. California.

Feb. 9, 1987.

Lee W. Cotugno, Kalisch & Fisher, Beverly Hills, Cal., for plaintiffs.

Andrew J. Guilford, Michael W. Kinney, Sheppard, Mullin, Richter & Hampton, Newport Beach, Cal., for defendants.

Everett G. Barry, Jr., Mulvaney & Kahan, San Diego, Cal., for debtor.

LOUISE DeCARL MALUGEN, Bankruptcy Judge.

Defendant, Grumman Energy Systems Company, a division of Grumman Allied Industries, Inc., a New York corporation ("Grumman") has moved this Court for determination of core proceeding and discretionary abstention under 28 U.S.C. § 1334(c)(1). An adversary proceeding for violation of automatic stay and breach of contract has been brought by Sun West Distributors, Inc., a California corporation ("Debtor"). Clearly, the automatic stay cause of action is a core proceeding under 28 U.S.C. § 157(b)(2)(G). Debtor contends that because the remaining causes of action constitute a core proceeding under 28 U.S.C. § 157(b)(2)(C), discretionary abstention is not appropriate.

### FACTS

Grumman manufactures solar collectors and solar products ("collectors") and sells them to authorized distributors. These distributors then resell the collectors to authorized dealers, who modify them and later resell them at retail to residential homeowners. On December 17, 1982, debtor became an authorized distributor of Grumman collectors, contracting with Grumman under the name of Southwest Solar Distributors, Inc. Southwest Solar Products, Inc. ("Southwest") was debtor's primary authorized dealer.

During late 1983, a contract dispute arose between debtor and Grumman. Thereafter, both Southwest and a third party, Lessor's Management And Data Services, Inc. ("LMDS") claimed ownership of certain collectors bought by debtor but stored by Grumman. A series of court proceedings followed. On February 15, 1985, Grumman filed a declaratory relief action in Orange County Superior Court against Southwest and LMDS, who both claimed ownership of collectors bought by debtor from Grumman. On May 14, 1985, debtor filed a petition under Chapter 11, Title 11 of the U.S. Code. Thereafter, on March 4, 1986, Grumman filed a creditor's claim of $1,089,907, of which amount $790,-000 was claimed as secured by purchase money mortgage. Finally, on May 14, 1986, this adversary proceeding was filed by debtor and others against Grumman for breach of contract, fraud, conversion and violation of automatic stay. On that same date, an identical complaint omitting the automatic stay cause of action was filed in San Diego Superior Court, but has not yet been served on Grumman.

## ISSUES

I. Whether this proceeding is a "core" or "non-core" proceeding within the meaning of 28 U.S.C. § 157.

II. Whether discretionary abstention under 28 U.S.C. § 1334(c)(1) is appropriate.

## I. DETERMINATION OF CORE PROCEEDINGS.

A. *Counterclaim Against Person Filing A Claim.*

■ Under 28 U.S.C. § 157, proceedings in the Bankruptcy Court are segregated into "core" and "non-core" proceedings. 28 U.S.C. § 157(b)(2) defines core proceedings to include, among others, (a) matters concerning administration of the estate, (b) allowance or disallowance of claims against the estate, and (c) counterclaims by the estate against persons filing claims against the estate. Non-core proceedings are those which are "otherwise related to a case under Title 11." 28 U.S.C. § 157(b)(3). The distinction is significant because the Bankruptcy Court is authorized to hear core proceedings and to issue final judgments therein. In non-core proceedings, the bankruptcy judge may hear such proceedings but, absent consent of the parties, must submit proposed findings of fact and conclusions of law to the District Court for entry of a final judgment. 28 U.S.C. § 157(c). If the parties consent, non-core matters which are otherwise related to a pending bankruptcy case are handled by the Bankruptcy Court in the same manner as core matters.

Because the term "core proceeding" is not explicitly defined in the Bankruptcy Code, there is much uncertainty surrounding what constitutes a core proceeding as opposed to a related proceeding. There are two general interpretations of the parameters of core jurisdiction under 28 U.S.C. § 157(b)(2). The "expansive" analysis construes the definition of core proceedings broadly to encompass all proceedings that come within the literal meaning of § 157(b)(2). This viewpoint is premised on the belief that the Bankruptcy Amendments and Federal Judgeship Act of 1984 (1984 Amendments) rectified the constitutional infirmities enunciated in *Northern Pipeline v. Marathon Pipeline*, 458 U.S. 50, 102 S.Ct. 2858; 73 L.Ed.2d 598 (1982).[1]

The "restrictive" analysis holds that the term "core proceeding" must be interpreted narrowly in light of *Marathon*. These courts take the view that the 1984 Amendments do not cure the constitutional defects detailed in *Marathon*, but that the

---

1. *See, e.g., In re Wood,* 52 B.R. 513 (Bankr.N.D. Ala.1985); *Matter of Baldwin-United Corp.,* 52 B.R. 539 (Bankr.S.D.Ohio 1985); *In re Pied Piper Casuals, Inc.,* 50 B.R. 549 (Bankr.S.D.N.Y.1985); *In re All American of Ashburn, Inc.,* 49 B.R. 926 (Bankr.N.D.Ga.1985); *In re De Lorean Motor Co.,* 49 B.R. 900 (Bankr.E.D.Mich.1985); *In re* *Harry C. Partridge, Jr. & Sons, Inc.,* 48 B.R. 1006 (Bankr.S.D.N.Y.1985); *In re Lion Capital Group,* 46 B.R. 850 (Bankr.S.D.N.Y.1985); *Macon Prestressed Concrete Co. v. Duke,* 46 B.R. 727 (D.Ga. 1985); *In re Marketing Resources Intern Corp.,* 43 B.R. 71 (Bankr.E.D.Pa.1984).

1984 Amendments adjust the bankruptcy court's jurisdiction to comport with guidelines established by the Supreme Court. Thus, § 157(b)(2) must be construed narrowly to fit within the constitutional purview of Marathon.[2]

Under the language of 28 U.S.C. § 157(b)(2), this action is a core proceeding. Debtor commenced this proceeding as a counterclaim against Grumman, who has filed a claim based on contract against the estate. Section 157(b)(2)(C) specifically defines as core proceedings counterclaims by the estate against persons filing claims against the estate.

In the recent decision of *In re Castlerock Properties*, 781 F.2d 159 (9th Cir.1986), the Ninth Circuit held:

> [S]tate law contract claims that do not specifically fall within the categories of core proceedings enumerated in 28 U.S.C. § 157(b)(2)(B)–(N) are related proceedings under § 157(c) even if they arguably fit within the literal wording of the two catch-all provisions, sections 157(b)(2)(A) and (O). To hold otherwise would allow the bankruptcy court to enter final judgments that this court has held unconstitutional. *In re Castlerock Properties*, 781 F.2d at 162.

Because the state law contract claims of debtor against Grumman fall within the explicit provisions of 28 U.S.C. § 157(b)(2)(C), *In re Castlerock Properties* does not appear to mandate that this action be deemed a non-core proceeding.

Unlike Grumman in this case, the creditor in *Castlerock* did not file his creditor's claim until *after* debtor's counterclaims were asserted. For that reason, the court declined to hold that the counterclaim was core under § 157(b)(2)(C), and further declined to consider debtor's arguments based upon jurisdiction by consent. The court did acknowledge that debtor "relies

on well-settled law that a creditor consents to jurisdiction over related counterclaims by filing a proof of claim." *In re Castlerock Properties, supra*, at 162.

However, the Ninth Circuit's holding in *Castlerock* was prefaced by the following "restrictive" language:

> [W]e are persuaded that a court should avoid characterizing a proceeding as "core" if to do so would raise constitutional problems. (citations). The apparent broad reading that can be given to § 157(b)(2) should be tempered by the *Marathon* decision. *In re Castlerock Properties, supra*, at 162.

Although this Court concludes that this matter is a "core" proceeding under 28 U.S.C. § 157(b)(2)(C), in the event that to do so would raise constitutional problems, an alternative basis for bankruptcy jurisdiction exists. Grumman has consented to bankruptcy jurisdiction by filing its proof of claim.

**B. *Jurisdiction By Consent.***

■ Before the *Marathon* decision, the Supreme Court had previously considered the propriety of a non-Article III court in bankruptcy matters exercising jurisdiction to determine a counterclaim filed in response to a creditor's claim in *Katchen v. Landy*, 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966). In *Katchen*, the counterclaim sought to recover a preference made voidable by § 57g, 11 U.S.C. § 93(g) (1964 Ed.) of the predecessor Bankruptcy Act. That counterclaim arose out of the Bankruptcy Act itself and, according to *Marathon, supra*, was in the nature of a public right.

The *Katchen* decision was premised on the theory of jurisdiction by consent, concluding that a person who files a claim in a bankruptcy proceeding is subject to the summary jurisdiction of the Bankruptcy

2. *See, e.g., In re Sturm*, 66 B.R. 325 (Bankr.N.D. Ill.1986); *In re L.T. Ruth Coal Co., Inc.*, 66 B.R. 753 (Bankr.E.D.Ky.1986); *In re Shaford Companies, Inc.*, 52 B.R. 832 (Bankr.D.N.H.1985); *In re TWI, Inc.*, 51 B.R. 470 (Bankr.E.D.Va.1985); *In re American Energy, Inc.*, 50 B.R. 175 (Bankr.D. N.D.1985); *In re Morse Electric Co., Inc.*, 47 B.R.

234 (Bankr.N.D.Ind.1985); *In re Pierce*, 44 B.R. 601 (D.Colo.1984); *Mohawk Industries v. Robinson Industries*, 46 B.R. 464 (D.Mass.1985); *In re Smith-Douglass, Inc.*, 43 B.R. 616 (Bankr.E.D.N. C.1984); *In re Atlas Automation, Inc.*, 42 B.R. 246 (Bankr.E.D.Mich.1984); *In re Dakota Grain Systems, Inc.*, 41 B.R. 749 (Bankr.D.N.D.1984).

Court. The *Marathon* decision questioned the jurisdiction by consent theory. However, a recent decision of the Ninth Circuit, *Pacemaker Diagnostic Clinic of America, Inc. v. Instromedix, Inc.*, 725 F.2d 537 (9th Cir.1984), *cert. denied*, 469 U.S. 824, 105 S.Ct. 100, 83 L.Ed.2d 45., and two later Supreme Court opinions reaffirm the concept of jurisdiction by consent expressed by *Katchen v. Landy, supra.*

In *Thomas v. Union Carbide Agricultural Products Co.*, 473 U.S. 568, 105 S.Ct. 3325, 87 L.Ed.2d 409 (1985), the court explained its *Marathon* decision:

> The Court's most recent pronouncement on the meaning of Article III is *Northern Pipeline*. A divided Court was unable to agree on the precise scope and nature of Article III's limitations. The Court's holding in that case establishes only that Congress may not vest in a non-Article III court the power to adjudicate, render final judgment, and issue binding orders in a traditional contract action arising under state law, without consent of the litigants and subject only to ordinary appellate review. *Thomas, supra*, 105 S.Ct. at 3335.

The most recent Supreme Court decision regarding jurisdiction under Article III is *Commodity Futures Trading Commission v. Schor*, — U.S. —, 106 S.Ct. 3245, 92 L.Ed.2d 675 (1986). In *Commodity Futures*, the court dealt with the provisions of the Commodities Exchange Act, 7 U.S.C. § 1, *et seq.* Under that act, a customer or commodity broker can seek redress by applying to the Commodity Futures Trading Commission ("CFTC") for an order directing the offender to pay reparations. The CFTC is further given jurisdiction to adjudicate counterclaims which arise out of the transaction or occurrence which gave rise to the complaint. Alternatively, suit may be filed in district court. In *Commodity Futures*, the customer originally filed for reparation before the CFTC. Thereafter, the broker sued Schor in district court, but then voluntarily dismissed his action and presented it as a counterclaim before the CFTC. Ultimately the CFTC found in favor of the broker and Schor appealed.

On appeal, Schor challenged the CFTC's statutory authority to adjudicate the counterclaim. The Court of Appeals, relying upon *Marathon*, found that the CFTC "lacks authority to adjudicate" common law counterclaims. *Schor v. Commodity Futures Trading Commission*, 740 F.2d 1262, 1264 (D.C.Cir.1984). The Supreme Court reversed, finding that the jurisdictional scheme under the Act was permissible. In doing so, it discussed the propriety of resolving the entire dispute in the administrative forum as a means of promoting the administrative remedy and of judicial economy. The Court concluded that the constitutional right to have matters heard by an Article III judge serves to protect "primarily personal, rather than structural interests" and that, as a personal right, the guaranty of Article III of the Constitution of an impartial and independent federal adjudication is subject to waiver. In doing so, the court expressly reaffirmed *Katchen v. Landy, supra*, as follows:

> Similarly, in *Katchen v. Landy*, 382 U.S. 323 [86 S.Ct. 467, 15 L.Ed.2d 391] (1966), this Court upheld a Bankruptcy referee's power to hear and decide state law counterclaims against a creditor who filed a claim in bankruptcy when those counterclaims arose out of the same transaction. *Commodity Futures, supra*, 106 S.Ct. at 3258.

Thus, jurisdiction by consent can be inferred from the filing of a creditor's claim.

*Commodity Futures* expands the jurisdiction by consent concept of *Katchen v. Landy*. In *Katchen*, the counterclaim was premised on the statutory right to avoid preferences. In *Commodity Futures*, the Court observed that *Katchen* upheld the bankruptcy court's power to hear and decide state law counterclaims against creditors who filed claims "when those counterclaims arose out of the same transaction." Both the claim and counterclaim in this case arise out of the same transaction, i.e., the contract between debtor and Grumman for collectors. Grumman asserts a proof

of claim for approximately $1.1 million. Debtor counterclaims for damages of $3.7 million based on a non-delivery of collectors under the contract. If debtor prevails on its counterclaim, Grumman must turn over either $3.7 million in damages or the collectors as property of the estate. 11 U.S.C. § 541; *see also, In re Scanlon,* 10 B.R. 245 (Bankr.S.D.Cal.1981). Because Grumman has voluntarily filed its creditor's claim in bankruptcy court, it has consented to this court's jurisdiction over the instant proceeding.

In summary, under the foregoing authority, this matter is a "core" proceeding within the meaning of 28 U.S.C. § 157 and this Court has the jurisdiction to enter a final judgment and order herein. Even if this proceeding were considered to be non-core in nature, the parties have consented to this Court's jurisdiction and such consent is constitutionally permissible.

This Court must now consider the issue of discretionary abstention of a core proceeding.

## II. ABSTENTION.

Abstention under 28 U.S.C. § 1334(c)(2) is mandatory where the action is: (1) based upon a state-law claim or cause of action that is non-core; (2) the case could not have been commenced in federal court absent the fact of a bankruptcy petition; and (3) if the case were commenced in a state court it could be timely adjudicated.

■ Mandatory abstention under § 1334(c)(2) is not required in this matter because: (1) this matter is a core proceeding; (2) a separate basis for federal jurisdiction exists in this court—diversity jurisdiction under 28 U.S.C. § 1332(a)(1); and (3) the timely adjudication in state court was not considered because no evidence was adduced on that issue.

Grumman has also moved for discretionary abstention under 28 U.S.C. § 1334(c)(1). Under this section, the court has discretion to abstain from hearing a bankruptcy proceeding "in the interests of justice, or in the interest of comity with state courts or respect for state law." Grumman argues that discretionary abstention is warranted due to the needless duplication which will occur because of the pending state action. To support this argument, Grumman relies upon *In re Counts,* 54 B.R. 730 (Bankr.D. Colo.1985) and *In re Dakota Grain Systems, Inc.,* 41 B.R. 749 (Bankr.D.N.D.1984). In both cases the creditor had not filed a proof of claim against the debtor. The court in *Dakota Grain Systems,* applied discretionary abstention only because mandatory abstention under § 1334(c)(2) was not available to non-core matters pending prior to the effective date of the 1984 Amendments. Grumman's reliance on the foregoing authority is misplaced.

■ Voluntary abstention should be considered where the debtor's estate acquires the right to prosecute an unliquidated claim based upon a transaction totally unrelated to the debtor's financial affairs, such as a claim arising from personal injury, wrongful death or a division of marital property upon divorce. Such claims ordinarily would be tried in a state court but, because of a pending bankruptcy action, are swept into the jurisdiction of an Article I bankruptcy court because of the expansive definition of "property of the estate" as set forth in 11 U.S.C. § 541. These are the claims that concerned the Supreme Court in its *Marathon* decision. *Macon Prestressed Concrete v. Duke,* 46 B.R. 727, 731 (D.Ga.1985).

■ Debtor's counterclaim asserted in this adversary proceeding is "inextricably tied to the bankruptcy proceeding."[3] *In re*

---

**3.** Abstention here would create an anomalous result. By filing this adversary proceeding, debtor combines its objection to Grumman's creditor's claim with its claim for affirmative relief. Both claims arise out of the same contract. The anomaly is that by debtor's procedural choice to join these two causes of action,

it may lose bankruptcy jurisdiction under the doctrine of abstention. To avoid this result, debtor is forced to split its causes of action by first objecting to Grumman's creditor's claim in bankruptcy court and later seeking affirmative relief in a state court action. The twin policies of bankruptcy—(1) debtor relief and rehabilita-

*All American of Ashburn, Inc.*, 49 B.R. 926, 927 (Bankr.N.D.Ga.1985). If debtor prevails on the merits of its complaint, over $3 million in property will come into the estate. If debtor does not prevail, Grumman's creditor's claim which exceeds $1 million will be included in debtor's plan of reorganization. Each is "inextricably tied to the bankruptcy proceeding." Although the rights of the parties regarding the contract dispute are controlled by state law, the applicable state law does not appear to be unsettled to the extent that it requires state law interpretation. *c.f., In re World Financial Services Center, Inc.*, 64 B.R. 980 (Bankr.S.D.Cal.1986). Voluntary abstention is not warranted, and this action should be retained within the jurisdiction of this Court.

Attorney for debtor is directed to prepare an order in conformance with this Memorandum Decision within ten (10) days from the date of entry hereof.

tion, and (2) fair, equitable and orderly treatment of creditors—are not served by abstaining in this matter.