In re S.B. MANNING, d/b/a Modern Car Wash, Debtor.

Bankruptcy No. 85–5772(11).

United States Bankruptcy Court, N.D. Alabama.

April 8, 1987.

---

Steven D. Heninger, Birmingham, Ala. and Walter J. Price, Jr., Huntsville, Ala., for the debtor.

Gerald Paulk, Scottsboro, Ala. and John M. Heacock, Huntsville Ala., for Jacobs Bank.

## FINDINGS, CONCLUSIONS, AND ORDER ON DEMAND FOR JURY TRIAL

L. CHANDLER WATSON, Jr., Bankruptcy Judge.

The above-styled case was commenced in this Court by the debtor's voluntary petition filed under title 11, chapter 11, United States Code, on September 17, 1985, and continues pending before this Court under said chapter. The debtor remains a debtor in possession.

The debtor's schedule of "Creditors Holding Security," filed September 26, 1985, listed Jacobs Bank and another creditor. Jacobs Bank was shown to be owed $196,000 and $44,000, secured by "Modern Car Wash Land, buildings and equipment; August 15, 1983," having a market value of $192,000. Jacobs Bank was also shown to be owed $12,000, secured by "One–8 track master machine One Orban Reverb, and one Teac Cassette Recorder," [sic] having a market value of $5,000. On October 25, 1985, Jacobs Bank filed one proof of claim for $202,500.89, plus "accrued interest after 9–25–85 and attorney's fees" and another proof of claim for $11,573.25, plus the same items.

On December 23, 1985, the debtor filed a pleading captioned: "CONTEST OF CLAIM AND COUNTERCLAIM." This pleading is introduced by an allegation that Jacobs Bank filed herein claims for $214,074.14, plus "accrued" [sic] interest and attorney's fees and a denial that the debtor is thus indebted. It further alleges that Jacobs Bank is indebted to the debtor on account of its breach of a fiduciary and confidential relationship with him which is detailed at length. The debtor alleges that he "was caused to suffer economic loss, lost business opportunity and ... extreme mental anguish," as a proximate consequence of the bank's actions. The pleading concludes with a demand for judgment in favor of the debtor and against Jacobs Bank in the sum of $2,000,000, "exclusive of interest and costs." At the foot of the pleading is a demand for a trial by jury of "all issues raised herein." This pleading was filed at the clerk's divisional office at Decatur. Apparently, no filing fee was paid.

On May 9, 1986, the Bankruptcy Court granted a motion by Jacobs Bank for leave to foreclose its mortgage upon the debtor's car-wash facility. On August 28, 1986, upon motion of the debtor, the Bankruptcy Court entered an order, determining to what property of the debtor the mortgage extended.

In the meantime (August 15, 1986), Jacobs Bank filed a two-part answer to the debtor's "counterclaim," stating: (1) No claim upon which relief could be granted was asserted by the debtor; and (2) Jacobs Bank denied the claim asserted. At the same time, Jacobs Bank filed a motion to

strike the demand by the debtor for a jury trial.

This case was assigned to the bankruptcy judge at Decatur and is now primarily before him; however, due to circumstances extrinsic to the case, the motion by Jacobs Bank to strike the debtor's demand for a jury trial of the objection to the creditor's claim and the debtor's counterclaim was heard at Huntsville by the undersigned bankruptcy judge. At the request of the two parties, the hearing was recessed to permit a further investigation of settlement possibilities, which did not prove fruitful. At a further hearing it was determined that after the completion of discovery procedures and a ruling by the Court on the motion to strike the jury demand the matter should be set for an evidentiary trial.

*Findings of Fact—*

The bankruptcy judge takes judicial notice of the foregoing matters of record in this case and finds them to be the essential facts.

*Conclusions by the Court—*

Whether a party is entitled to a jury for the trial of certain issues which may come before a bankruptcy court and, if so, whether a jury trial may be conducted in a bankruptcy court are debatable questions which constitute part of the legacy from the Supreme Court's determination that the 1978 congressional grant of jurisdiction to be exercised by bankruptcy judges appointed under Article I of the United States Constitution[1] was impermissible[2] and the 1984 decision by Congress not to restructure bankruptcy court jurisdiction under Article III of the Constitution.[3]

In 1985, Professor Lawrence P. King of New York University School of Law, an acknowledged authority on bankruptcy law, wrote:

The Supreme Court recognized the lack of a general right to trial by jury in the bankruptcy court in *Katchen v. Landy* [382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966)]. The Court held that the bankruptcy court had jurisdiction to award an affirmative judgment in favor of the bankrupt estate when the trustee in bankruptcy asserted, as a counterclaim, a voidable preference received by the creditor. Normally, preference actions were within the concurrent jurisdiction of the district court and the state court, in which there was a right to jury trial. But when the transferee was also a creditor and filed a proof of claim, the Court concluded that the bankruptcy court had summary jurisdiction to determine the validity and amount of a preference and to award an affirmative judgment. The Court held the nonexistence of a right to a jury trial in the bankruptcy court to be of no moment.[4] (Note numbers omitted.)

Professor King points out that the bankruptcy court and the United States district court are both courts of equity but that the district court is also a court of law and that there is no right to trial by jury in a court of equity, from which he concludes that any right to a jury trial in matters relating to a bankruptcy case must exist only in the district court.[5] In the 1978 Bankruptcy Reform Act,[6] the provisions relevant to the jury-trial issue in the instant case were placed in 28 United States Code § 1480(a) and provided as follows:

[T]his chapter and title 11 do not affect any right to trial by jury, in a case under title 11 or in a proceeding arising under title 11 or arising in or related to a case under title 11, that is provided by any statute in effect on September 30, 1979.

Professor King believes that section 1480 was implicitly repealed by the enactment of

1. The Bankruptcy Reform Act of 1978; Pub.L. 95–598 (1978).

2. *Northern Pipeline Construction Co. v. Marathon Pipeline Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982).

3. Bankruptcy Amendments and Federal Judgeship Act of 1984; Pub.L. 98–353 (1984).

4. King, *Jurisdiction and Procedure Under the Bankruptcy Amendments of 1984,* 38 Vand.L. Rev. 675, 704 (1985).

5. *Id.* at 703–04.

6. Pub.L. 95–598, *supra* note 1.

984

28 U.S.C. § 1411, which was added by the 1984 bankruptcy amendments,[7] if section 1480 was not repealed outright by the 1984 legislation.[8] The latter point rests upon the likely conclusion that section 113 of the 1984 Act repeals section 1480 and that the contrary provisions of section 121 of the 1984 Act are inconsistent with the general purpose and thrust of the legislation and constitute a congressional misprision.

Professor King also states that unless section 1480 was repealed, there would have been no necessity to enact section 1411.[9] The part of section 1411 relevant here provides: "... this chapter and title 11 do not affect any right to trial by jury that an individual has under applicable non-bankruptcy law with regard to a personal injury or wrongful death tort claim." This type of claim may be tried only in the district court, as provided in 28 U.S.C. § 157(b)(5); and, as Professor King points out, any right to a jury trial of such a claim will only be exercised in the district court—not in a bankruptcy court.[10]

In 28 U.S.C. § 157(b)(1), Congress provided that "[b]ankruptcy judges may hear and determine all ... core proceedings arising under title 11, or arising in a case under title 11," referred by the district court to the bankruptcy judges. After July 10, 1984, the United States District Court for the Northern District of Alabama made such a reference of all bankruptcy cases.

■ In 28 U.S.C. § 157(b)(2)(B) and (C), Congress defined "core" proceedings to include the "allowance and disallowance of claims against the estate" and "counterclaims by the estate against persons filing" such claims. In the present proceeding before the bankruptcy court, we have: (1) the debtor's contest of the claim filed by Jacobs Bank against the estate created by the filing of the debtor's chapter 11 petition;[11] and (2) the debtor's counterclaim

against the claimant. It is clear from section 157(b)(2)(B) and (C) that these are core proceedings which, by direction of the Congress and by reference from the district court, are to be heard and determined by the bankruptcy judges or—put differently—are to be heard and determined in the bankruptcy court.[12]

But what of the allegation that the bank's actions caused the debtor "to suffer ... extreme mental anguish," one may ask in regard to the exception in section 157(b)(2)(B). The inclusion of "allowance or disallowance of claims against the estate" as a core proceeding contains an exception for "the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11." Although the debtor has injected into the counterclaim against his creditor an aspect which speaks in terms of a personal-injury tort claim *against the creditor*, the exception in section 157(b)(2)(B) is of such a claim *against the estate*. Thus, it appears that there was no intent on the part of Congress to forbid bankruptcy courts from trying and determining personal-injury tort claims as such but that the intent was not to permit an alleged tort-feasor to drag an injured plaintiff into a bankruptcy court for liquidation of the tort claim. There is, consequently, no such exception to the inclusion in core proceedings of "counterclaims by the estate against persons filing claims," as set forth in subsection (b)(2)(C). From the foregoing, one is brought back to the initial conclusion that the debtor's counterclaim to the bank's claim is to be heard and determined in the bankruptcy court, as a core proceeding, even though it contains an aspect sounding in tort for a personal injury. As a matter of fact, such appears to be the debtor's intention, for the debtor has made no effort to divorce his claim from the

---

7. Pub.L. 98–353, *supra* note 3.

8. King, *supra* note 4, at 703.

9. *Id.*

10. King, *supra* Note 4, at 704.

11. 11 U.S.C. § 541(a) (1978).

12. "In each judicial district, the bankruptcy judges in regular active service shall constitute a unit of the district court to be known as the bankruptcy court for that district." 28 U.S.C. § 151 (1986).

bank's claim, so as to assert it in a separate adversary proceeding or in a civil action in the district court or in the state courts, and the debtor—to this point—has not hinted at any dissatisfaction with having the subject matter of the counterclaim adjudicated in the bankruptcy court.

One may, however, question the matter further by saying that unless the consent of the debtor overrides the unequivocal language of the statute, the personal-injury aspect of the counterclaim must be tried in the district court as stated in subsection (b)(5). That part of subsection (b) directs that the "district court shall order that personal injury tort and wrongful death claims shall be tried in the district court...." If this provision is read to require that a debtor's claim for a personal-injury tort, asserted as a counterclaim to a creditor's claim, shall not be tried in the bankruptcy court, the provision is used as a proof text which is to be read out of context, thus creating an unnecessary conflict with the illustrations of core proceedings set out in subsection (b)(2)(B) and (C). It seems obvious that this direction in subsection (b)(5) is otherwise. It was placed in subsection (b) to provide a direction for trying "personal injury tort or wrongful death claims against the estate," because they are excepted from the type of core proceeding alluded to in subsection (b)(2)(B). This direction serves no discernable policy or purpose if applied to such a claim when asserted by a debtor as a counterclaim to a creditor's claim.

If the thoughts projected by Professor King and the foregoing are allowed to converge, the conclusion arises that the debtor's counterclaim is to be tried in the bankruptcy court, which is a court of equity, that ordinarily there is no right to a jury trial in a court of equity, and that (as to the counterclaim) there is no statutory provision which alters the ordinary absence of a jury trial in a bankruptcy court. Nonetheless, there remains the Seventh Amendment to the Constitution of the United States, which commands:

In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury shall be otherwise re-examined in any court of the United States, than according to the rules of the common law.

■ The debtor's assertion that the bank breached a fiduciary and confidential relationship with him, thereby causing financial loss and personal injuries to the debtor, for which a judgment in the sum of $2,000,000 is sought, is a common-law type of claim. It may be contrasted with the type of relief which might be sought in a court of equity, such as praying for an accounting, or that a transaction be voided and set aside, or that a status be declared void, or that continuance of an act of nuisance be prohibited, or that the status quo be preserved, et cetera. Thus, if the debtor's claim were asserted other than as a counterclaim to a creditor's claim in a bankruptcy case, it appears that the debtor would have a jury-trial right protected by the Seventh Amendment.[13] The question here is whether the debtor has such a right when asserting a counterclaim to the creditor's claim in this bankruptcy case. If the right exists, the congressional structure of "core" proceedings and its directives for adjudication must be shaped to preserve that right or the statutory provisions must be held impermissible.

The Supreme Court, in *Katchen v. Landy*, 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966), seems to have said—but may not have held—that there would be no common law right for the *creditor* to demand a jury for the trial of the counterclaim in the present case. There, it was stated:

But although petitioner might be entitled to a jury trial on the issue of preference if he presented no claim in the bankruptcy proceeding and awaited a federal plenary action by the trustee, *Schoenthal v Irving Trust Co.* 287 US 92, 77 L ed 185, 53 S Ct 50, when the same issue arises as part of the process of allowance and disallowance of claims, it is triable in equity.

13. *See Katchen v. Landy*, 282 U.S. 323, at 336, 86 S.Ct. 467, at 474, 15 L.Ed.2d 391 (1966); *cf. In re*

*Mauldin*, 52 B.R. 838, at 841 (Bankr.N.D.Ms. 1985) [13 B.C.D. 603].

The Bankruptcy Act, passed pursuant to the power given to Congress by Art I, § 8, of the Constitution to establish uniform laws on the subject of bankruptcy, converts the creditor's legal claim into an equitable claim to a pro rata share of the res, *Gardner v. New Jersey*, 329 US 565, 573–574, 91 L ed 504, 514, 515, 67 S Ct 467 [471–72], a share which can neither be determined nor allowed until the creditor disgorges the alleged voidable preference he has already received. See *Alexander v Hillman*, 296 US 222, 242, 80 L ed 192, 201, 56 S Ct 204 [211]. As bankruptcy courts have summary jurisdiction to adjudicate controversies relating to property over which they have actual or constructive possession, *Thompson v. Magnolia Petroleum Co.,* 309 US 478, 481, 84 L ed 876, 879, 60 S Ct 628 [629]; *Cline v. Kaplan*, 323 US 97, 98–99, 89 L ed 97, 99, 65 S Ct 155 [156]; *May v. Henderson*, 268 US 111, 115–116, 69 L ed 870, 873, 874, 45 S Ct 456 [458–59], and as the proceedings of bankruptcy courts are inherently proceedings in equity, *Local Loan Co. v. Hunt*, 292 US 234, 240, 78 L ed 1230, 1232, 54 S Ct 695 [697], 93 ALR 195; *Pepper v Litton*, 308 US 295, 304 84 L ed 281, 287, 60 S Ct 238 [244], there is no Seventh Amendment right to a jury trial for determination of objections to claims, including § 57(g) objections.

In *Katchen v. Landy, supra,* the subject of litigation was an effort to recover a *preference* from a creditor who had filed a claim in a bankruptcy case—the trustee's right having been created by section 60(b) of the Bankruptcy Act.[14] Because such a proceeding is somewhat similar to the setting aside of a fraudulent transfer of the debtor's property, it is questionable whether the proceeding would have been a common law type of action against the creditor, if asserted in a plenary action outside of the bankruptcy court. The Supreme Court

did not see fit, however, to declare the preference proceeding an equitable-type proceeding in which there would not have been a right to trial by jury. The Court plainly rejected the creditor's demand for a jury trial, stating that "there is no Seventh Amendment right to a jury trial for determination of objections to claims." *Katchen v. Landy, supra,* 382 U.S. at 337, 86 S.Ct. at 476.

If the Court intended its explicit language, it appears to be saying that the determination of an objection to a creditor's claim in a bankruptcy case is in the mainstream of the bankruptcy process enacted by Congress under its power to establish "uniform laws on the subject of bankruptcies throughout the United States," as provided in Article I, section 8, Constitution of the United States, and that such a determination is thus properly placed in the bankruptcy courts.[15] Further, such a determination is essentially an equitable proceeding to determine shares of the debtor's estate (or, in a chapter 11 case, shares of the debtor's liquidated estate or the fruits of the debtor's continued business operations). The fact that the objection to the claim might take the form of a counterclaim as to which there otherwise would be (or might be) a right to a trial by jury did not sway the court from its conclusion that the proceeding was basically an equitable one and that there was no right to a jury trial of the objection.

The Supreme Court's holding as to "preferences" has been reasserted by other courts.[16] Whether the Court's language in *Katchen v. Landy, supra,* is to be applied literally to other types of counterclaims when asserted as an objection to a creditor's claim is not certain. The bankruptcy judge's view is that the Supreme Court should not have this court speak for it, if the high Court's language is to be modified or limited.

14. Formerly, 11 U.S.C. § 96(b) (1968).

15. This, of course, coincides with the congressional view, expressed by the inclusion of objections to claims in core proceedings. 28 U.S. § 157(b)(2)(B).

16. *Matter of McLouth Steel Corp.,* 55 B.R. 357 (E.D.Mich.1985) [14 C.B.C.2d 22]; *In re Southern Indus. Banking Corp.,* 66 B.R. 370, 15 B.C.D. 249 (Bankr.E.D.Tenn.1986); *cf. In re Graham,* 747 F.2d 1383 (11th Cir.1984).

There appears to be a further possible reason here for concluding that the counterclaim need not be tried before a jury, where it is the objecting and counter-claiming debtor who is demanding the trial by jury. It may be that any right to a jury has been waived by the debtor in asserting his counterclaim in the vehicle of an objection to the creditor's claim. If the debtor's assertion that Jacobs Bank violated a fiduciary and confidential relationship alleges a claim which arose from the same transaction as the creditor's claim, the debtor would have been compelled to assert his claim as a counterclaim to the bank's claim.[17] That is not the case here. While the debtor's counterclaim is related to the loans made to him by the bank, it did not arise out of the transactions whereby the loans were made. On the contrary, the counterclaim is alleged to have arisen from a fiduciary and confidential relationship which arose thereafter. The debtor then may be said to have elected to assert his counterclaim in equity's realm, where trial is by the chancellor or court rather than by jury. In this sense, the debtor waived any right to trial by a jury of the demand couched in the counterclaim.[18]

The bankruptcy judge having concluded that the debtor has no statutory or constitutional right to a jury trial of the counterclaim, the motion to strike by Jacobs Bank is well-taken, and the Court will enter an order striking the debtor's demand for a jury trial.

It is unnecessary to consider whether some exception to Professor King's general conclusion exists in regard to other matters defined by Congress as "core" proceedings or with regard to "related" matters which may be tried to a conclusion in the bankruptcy court, when approved by the district court and consented to by all of the parties.[19] Likewise, it is unnecessary to consider whether the bankruptcy court in various circumstances may or should conduct a jury trial.

## ORDER STRIKING JURY DEMAND

On motion of Jacobs Bank and for cause, it is ORDERED by the Court that the demand of the debtor, S.B. Manning, for a jury trial of his objection to the claim of said bank and his counterclaim against said bank is stricken from the court file for the above-styled case.

---

17. "(A) *Compulsory Counterclaims.*
A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim...." Fed.R.Civ.P. 13(a). This rule is made applicable to an adversary proceeding in a bankruptcy case by Bankr.R. 7013. Bankr.R. 3007 includes the following provision: "[i]f an objection to a claim is joined with a demand for relief of the kind specified in Rule 7001, it becomes an adversary proceeding." Bankr.R. 7001 provides that an adversary proceeding is a proceeding in a bankruptcy court "to recover money," *inter alia.*

18. Bankr.R. 9015, which deals with jury trials, is not contrary to this result.

19. 28 U.S.C. § 157(c)(2) (1986).