**In re David Earl BEUGEN, Debtor.**

**TAUBMAN WESTERN ASSOCIATES, NO. 2, a Michigan Partnership, Plaintiff,**

v.

**David BEUGEN, Defendant.**

**David E. BEUGEN, Counterclaimant,**

v.

**TAUBMAN WESTERN ASSOCIATES, NO. 2, a Michigan Partnership, Counterdefendant.**

**Bankruptcy No. 3–86–00686–JR. Adv. No. 3–86–0301–JR.**

United States Bankruptcy Court, N.D. California.

Jan. 26, 1988.

Nicholas B. Waranoff, Deborah S. Shefler, Steinhart & Falconer, San Francisco, Cal., for plaintiff-counterdefendant.

Paul J. Williams, Reno, Nev., for defendant-counterclaimant.

## OPINION

THOMAS E. CARLSON, Bankruptcy Judge.

Two principal questions are presented in this case: whether a counterclaim filed by a debtor-in-possession against a creditor that has asserted a claim against the bankruptcy estate may properly be classified as a core proceeding, and whether the debtor-in-possession is entitled to a jury trial in such a proceeding. I conclude that the bankruptcy court may try the counterclaim as a core proceeding without a jury, because the counterclaim arises from the same transaction as the creditor's claim against the bankruptcy estate.

### FACTS

This case grows out of a dispute concerning a commercial lease. Plaintiff Taubman Western Associates No. 2 (Taubman) owns a shopping center in Reno, Nevada, called Meadowood. Defendant–Counterclaimant David E. Beugen (Beugen) leased space at Meadowood, in which he operated a hair salon. In September 1983, Taubman commenced eviction proceedings in Nevada state court based on Beugen's alleged failure to pay rent. Taubman later filed a separate state-court, action to collect approximately $30,000 overdue rent. The two actions were later consolidated.

Beugen filed an answer and counterclaim in February 1984. Beugen's answer alleged that Taubman had overstated the rent due, because Taubman had agreed to a reduction of rent to induce Beugen to stay on the premises. Beugen's counterclaim alleged that Taubman had breached its obligations as lessor because the shopping center did not create the promised amount of foot traffic, because the tenant mix was inappropriate, and because Taubman had made false and improper demands upon Beugen.

In January 1986, Beugen filed a supplemental counterclaim alleging that Taubman improperly evicted him in November 1983. Beugen alleged that Taubman obtained a default judgment in the eviction proceedings by stating to the court that it had received no response from Beugen regarding the action, when Beugen had shortly before responded to an earlier eviction action and another judge had dismissed that action. Beugen also alleged that Taubman caused the sheriff to seize Beugen's personal property from the premises pursuant to the default judgment. Beugen states that he promptly filed a motion to vacate the default judgment and that the motion was granted in March 1984. The supplemental counterclaim seeks compensatory and punitive damages totalling $200,000, approximately $170,000 more than Taubman's claim for unpaid rent.

The actions and counterclaims described above comprise the present action. Before the matter could be tried in the Nevada court, Beugen filed a petition under Chapter 11 of the Bankruptcy Code in this district on March 11, 1986. Taubman then removed this action to the United States Bankruptcy Court for the District of Neva-

da on June 6, 1986.[1] Venue was later transferred to this district.

At issue here is whether the removed action shall be tried by a jury and whether it is a "core" proceeding. The parties agree that Beugen filed a timely jury demand and that Beugen would enjoy a right to jury trial if the action were tried in state court. Taubman contends that there is no right to jury trial on either the action or the counterclaim when they are tried in bankruptcy court, however, because they thereby become proceedings in equity. Beugen opposes the motion to strike the jury demand with respect to his counterclaim, and seeks to have that counterclaim determined to be a noncore proceeding.

## ANALYSIS

### A. Beugen's Counterclaim is Compulsory

Federal Rule of Civil Procedure 13(a) requires a party to raise as a counterclaim any claim against the opposing party that "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim."

A claim and counterclaim may arise from the same "transaction or occurrence" even if they do not involve identical facts. The appropriate test is whether the claims are "logically related." *See, e.g., United States v. Heyward-Robinson Co.,* 430 F.2d 1077, 1081 (2d Cir.1970), *cert. denied,* 400 U.S. 1021, 91 S.Ct. 582, 27 L.Ed.2d 632 (1971); 6 C. Wright & A. Miller, *Federal Practice and Procedure,* § 1410 at 46–48, 54 (1971). *Cf. Moore v. New York Cotton Exchange,* 270 U.S. 593, 610, 46 S.Ct. 367, 371, 70 L.Ed. 750 (1926) (interpretating similar language under former equity rules). This test is to be liberally construed with

the purpose of "avoiding multiplicity of suits and duplication of judicial effort" by requiring related claims to be tried together. *Albright v. Gates,* 362 F.2d 928, 929 (9th Cir.1966).

■ I conclude that, under the logical relationship test, Taubman's claim and Beugen's counterclaims arise from the same transaction. Taubman's claim seeks to recover unpaid rent due under the lease. Beugen's original counterclaim alleges that Taubman failed to perform its obligations as lessor and, as a result, that no rent is due and Beugen is entitled to damages. Taubman's claim and Beugen's counterclaim are logically related, because both turn upon the parties' respective rights and duties under a single lease. Beugen's supplemental counterclaim alleges that Taubman improperly recovered possession of the premises in the Nevada state court through misrepresentations to that court. This supplemental counterclaim is also logically related to Taubman's claim, because both involve the same lease, and because Beugen's damage recovery will undoubtedly be influenced by whether he has performed his obligations under the lease. The claim and counterclaims are thus sufficiently related that substantial judicial economy will result from trying them together. *See Albright,* 362 F.2d at 929; *In re Penn Central Transportation Co.,* 419 F.Supp. 1376, 1383 (E.D.Pa.1976).

### B. Right to Jury Trial

It is well established that no *statutory* right to jury trial exists in bankruptcy proceedings, save in limited circumstances not applicable here. *See* 28 U.S.C. § 1411 [2]; *In*

---

1. Beugen argues in his response to Taubman's motion to strike the jury demand that this proceeding should be remanded to the Nevada courts because it was not timely removed. Beugen contends that under 28 U.S.C. § 1446 Taubman was required to file its removal petition within 60 days after Beugen filed bankruptcy. I decline to rule on Beugen's argument in the absence of a formal motion to remand. I do note, however, that Taubman's petition for removal was timely if governed by Bankruptcy Rule 9027, and that there is persuasive authority holding that Bankruptcy Rule 9027 rather than 28 U.S.C. § 1446 governs removal of bankrupt-

cy-related proceedings. *See In re Pacor, Inc.,* 72 B.R. 927, 928–31, 15 BCD 1287 (Bankr.E.D.Pa. 1987) *and cases and authorities cited therein.*

2. Sections 1411(a) and 157(b)(2)(B), (b)(5) of Title 28 preserve the right to jury trial in the determination of "personal injury or wrongful death claims against the estate." Beugen's response to the motion to strike jury demand makes occasional reference to the fact that Beugen has sought damages for mental anguish caused by Taubman's alleged wrongful eviction and seizure. Assuming Beugen is contending that his counterclaim is one for personal injury,

*re Hendon Pools of Michigan, Inc.*, 57 B.R. 801, 802 (E.D.Mich.1986); *In re American Energy, Inc.*, 50 B.R. 175, 180, 13 BCD 200 (Bankr.D.N.D.1985); *In re O'Bannon*, 49 B.R. 763, 768, 13 BCD 49, 51–53 (Bankr.M.D.La.1985). It is equally well established that the parties to bankruptcy proceedings may not be deprived of any right to jury trial guaranteed by the Constitution. Thus, in determining whether a right to jury trial exists in a particular type of bankruptcy proceeding, one examines the traditional factors for determining whether there is a right to jury trial in civil proceedings—whether proceedings of that type were traditionally tried to a jury before the merger of law and equity, the nature of the remedy sought, and the practical limitations on the abilities of juries. *See e.g., In re Lombard–Wall, Inc.*, 48 B.R. 986, 993, 13 BCD 236 (S.D.N.Y.1985); *In re Dunoco Corp.*, 56 B.R. 137, 139 (Bankr.C.D.Cal.1985); *Hauytin v. Grynberg*, 52 B.R. 657, 660–61, 13 BCD 632 (Bankr.D.Colo.1985).

■ There is clearly no constitutional right to a jury trial in Taubman's action against Beugen. Taubman's action is a "claim" against the bankruptcy estate, in that it asserts a right to receive payment from Debtor Beugen. *See* 11 U.S.C. § 101(4). The Supreme Court has held that the determination of a claim in bankruptcy is a proceeding in equity in which there is no right to jury trial, even if the claim is based on what would be an action at law in which there would be a right to jury trial if tried in another court. *Katchen v. Landy*, 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966). This is so because bankruptcy law "converts the creditor's legal claim into an equitable claim to a pro rata share of the *res* [the bankruptcy estate]." *Id.* at 336, 86 S.Ct. at 476. The parties to this action thus agree that there is no right to jury trial in Taubman's claim against the bankruptcy estate. Their dispute is whether Beugen's counterclaim against Taubman is

to be tried in the same manner as the claim.

At least some counterclaims against creditors can also be tried without a jury. *Katchen* held that a preference action asserted by the bankruptcy trustee against a creditor who had filed a claim against the bankruptcy estate could be tried without a jury. The Court had previously held that there is a right to jury trial in a preference action that is tried in the District Court against a creditor that does not file a claim against the bankruptcy estate. *See Schoenthal v. Irving Trust Co.*, 287 U.S. 92, 53 S.Ct. 50, 77 L.Ed. 185 (1932). The Court concluded in *Katchen*, however, that there is no right to jury trial in a preference action when it is asserted as a counterclaim to a creditor's claim. This is so, the Court concluded, because section 57g of the Bankruptcy Act provided that the claim of a creditor who received a preference must be disallowed until the creditor returned that preference. 382 U.S. at 330, 86 S.Ct. at 473.[3] It was thus necessary to determine whether the creditor retained a preference to determine the creditor's claim. *Id.* at 334, 86 S.Ct. at 475. The Court concluded that the bankruptcy court could adjudicate the preference counterclaim as a "summary" proceeding without a jury, because the counterclaim was merely part of the controversy placed before the bankruptcy court by the creditor's filing of a claim.

> Unavoidably and by the very terms of the Act, when a bankruptcy trustee presents a § 57g objection to a claim, the claim can neither be allowed nor disallowed until the preference matter is adjudicated. The objection under § 57g is, like other objections, part and parcel of the allowance process and is subject to summary adjudication by a bankruptcy court.

*Id.* at 330, 86 S.Ct. at 473.

The Court acknowledged that allowing the preference counterclaim to be tried as a

---

he still has no statutory right to jury trial on the counterclaim. Such a right exists only with respect to personal injury claims *against the estate,* not actions by the estate against creditors. Any right to jury trial in a personal injury action by the estate is created by the Constitu-

tion, not by statute. *See In re Manning,* 71 B.R. 981, 984–85 (Bankr.N.D.Ala.1987).

**3.** The Bankruptcy Code currently in effect contains a provision similar to section 57g of the Bankruptcy Act of 1898. *See* 11 U.S.C. § 502(d).

summary proceeding would conflict with the general principal that where legal and equitable issues are presented in a single proceeding " 'only under the most imperative circumstances ... can the right to jury trial of legal issues be lost through prior determination of equitable claims;' " *Id.* at 338, 86 S.Ct. at 477 (quoting *Dairy Queen, Inc. v. Wood,* 369 U.S. 469, 472–73, 82 S.Ct. 894, 897, 8 L.Ed.2d 44 (1962)). The Court had previously noted, however, that one of the most important policies of the bankruptcy laws is that claims be adjudicated promptly and inexpensively.

When Congress enacted general revisions of the bankruptcy laws in 1898 and 1938, it gave "special attention to the subject of making [the bankruptcy laws] inexpensive in [their] administration." [Citations Omitted]. Moreover, this Court has long recognized that a chief purpose of the bankruptcy laws is "to secure a prompt and effectual administration and settlement of the estate of all bankrupts within a limited period," *Ex parte Christy,* 3 How. 292, 312 [11 L.Ed. 603 (1845)], and that provision for summary disposition, "without regard to usual modes of trial attended by some necessary delay," is one of the means chosen by Congress to effectuate that purpose.

*Id.* at 328–29, 86 S.Ct. at 472. The Court, therefore, concluded that the *Dairy Queen* doctrine should not be applied and that issues raised by the preference counterclaim could be adjudicated without a jury.

In neither *Beacon Theatres [Inc. v. Westover,* 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959)] nor *Dairy Queen* was there involved a specific statutory scheme contemplating the prompt trial of a disputed claim without the intervention of a jury. We think Congress intended the trustee's § 57g objection to be summarily determined; and to say that because the trustee could bring an independent suit against the creditor to recover his voidable preference, he is not entitled to have his statutory objection to the claim tried in the bankruptcy court in the normal manner is to dismember a scheme which Congress has prescribed. *See Al-*exander v. Hillman,* 296 U.S. 222, 243 [56 S.Ct. 204, 211, 80 L.Ed. 192 (1935)]. Both *Beacon Theatres* and *Dairy Queen* recognize that there might be situations in which the Court could proceed to resolve the equitable claim first even though the results might be dispositive of the issues involved in the legal claim. To implement congressional intent, we think it essential to hold that the bankruptcy court may summarily adjudicate the § 57g objection; and, as we have held above, the power to adjudicate the objection carries with it the power to order surrender of the preference.

*Id.* at 339–40, 86 S.Ct. at 478.

█ I conclude that there is no right to a jury trial in the present case even though the counterclaim asserted by Beugen is not for recovery of a preference. Numerous courts held before *Katchen* that the bankruptcy court could try as a summary proceeding any counterclaim asserted by a trustee against a creditor that had filed a claim, so long as the counterclaim arose from the same transaction as the creditor's claim. *See Peters v. Lines,* 275 F.2d 919 (9th Cir.1960); *In re Majestic Radio & Television Corp.,* 227 F.2d 152, 156 (7th Cir.1955), *cert. denied,* 350 U.S. 995, 76 S.Ct. 545, 100 L.Ed. 860 (1956); *In re Solar Mfg. Corp.,* 200 F.2d 327, 330–31 (3d Cir. 1952), *cert. denied,* 345 U.S. 940, 73 S.Ct. 831, 97 L.Ed. 1366 (1953). The logic behind these decisions is similar to that adopted by the Supreme Court in *Katchen*—a counterclaim arising from the same transaction as the creditor's claim against the estate may be decided in the same manner as the claim, because it is merely another part of the same legal controversy. The Ninth Circuit stated in *Peters v. Lines:*

We can see no valid reason why the filing of a proof of claim should not constitute a consent to the bankruptcy court's jurisdiction so as to enable the bankruptcy court to render an affirmative judgment against the creditor on the trustee's counterclaim arising out of the same contract. Any other rule would require a trustee to split a cause of action by defending against the claim in the

summary proceedings and then seeking affirmative relief in a plenary suit. By filing a claim appellants agreed to submit their side of the controversy to the bankruptcy court's adjudication. In submitting one side of a controversy for resolution logic dictates that the entire controversy should be open for resolution. This is the same reasoning as that underlying Rule 13(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A. dealing with compulsory counterclaims. See the able discussion in *In re Farrell Publishing Corp.,* D.C.S.D.N.Y.1955, 130 F.Supp. 449, concerning this interrelation. Far more expeditious use of the judicial system prevails when controversies arising out of the same transaction are determined in one action than in two separate actions.

275 F.2d 919, 925 (9th Cir.1960). *Peters* and other similar cases were cited with approval by the Supreme Court in *Katchen.* See 382 U.S. at 326 n. 1, 335–36 & n. 12, 86 S.Ct. at 470 n. 1, 475–76 & n. 12. The Supreme Court also recently stated that *Katchen* applies to any counterclaim arising from the same transaction as the creditor's claim. *See Commodity Futures Trading Commission v. Schor,* 478 U.S. 833, 106 S.Ct. 3245, 3258, 92 L.Ed.2d 675 (1986).

I thus conclude that Beugen's counterclaim may be tried without a jury, because it is a compulsory counterclaim that arises from the same transaction as Taubman's claim against the estate.

**C. Core vs. Noncore Proceeding**

■ Whether a proceeding is core or noncore determines what powers a bankruptcy judge may exercise in the proceeding. Congress established the core-noncore distinction in response to the celebrated decision of the Supreme Court in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). That case held that non-Article III bankruptcy judges could not enter final judgments subject only to traditional appellate review in certain bankruptcy-related proceedings governed by state law, absent the consent of the parties. In

response to *Northern Pipeline,* Congress has provided that in "noncore" proceedings, bankruptcy judges may enter only proposed findings of fact and conclusions of law subject to *de novo* review by the district court, unless the parties consent to the bankruptcy judge entering final judgment. *See* 28 U.S.C. § 157(c). In "core" bankruptcy proceedings, bankruptcy judges may enter final judgment subject only to traditional appellate review. *See* 28 U.S.C. § 157(b)(1). Congress also established a list of proceedings it determined to be core proceedings. *See* 28 U.S.C. § 157(b)(2).

Beugen's counterclaim against Taubman is a core proceeding under 28 U.S.C. § 157(b)(2). That section provides:

Core proceedings include, but are not limited to—

.   .   .   .   .

(C) counterclaims by the estate against persons filing claims against the estate....

By asserting a demand for payment against debtor-in-possession Beugen in this chapter 11 bankruptcy case, Taubman has asserted a "claim" against the estate. *See* 11 U.S.C. § 101(4); *In re Hinkley,* 58 B.R. 339, 344–45 (Bankr.S.D.Tex.1986) (removed state-court action against debtor is a "claim"). It is equally clear from the caption and substance of Beugen's pleadings that Beugen has asserted a counterclaim against Taubman.

Beugen contends, however, that section 157(b)(2)(C) is unconstitutional as applied to this case, because his counterclaim is a state-law action by a debtor-in-possession, and thus indistinguishable from the proceeding at issue in *Northern Pipeline.* I do not agree.

Whether a proceeding is properly classified as core does not depend solely on whether the outcome turns upon issues of state law.

A claim by a creditor for money owed by the debtor, a trustee's effort to set aside a preference, or a trustee's decision as to who has a better claim might depend entirely upon such matters of state

law as the validity of a lien or an interpretation of a state recording statute. For this reason, Congress specifically provided that the "determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law." 28 U.S.C. § 157(b)(3). It is the nature of the proceeding—its relation to the basic function of the bankruptcy court—not the state or federal basis for the claim, that makes the difference here.

*Arnold Print Works, Inc. v. Apkin*, 815 F.2d 165, 169 (1st Cir.1987). The appropriate factors in determining whether a state-law proceeding is core or noncore are: (1) how central the proceeding is to the bankruptcy case; (2) whether the proceeding is of a type traditionally decided by non-Article III judges [4]; and (3) whether the nondebtor party has been unreasonably forced to litigate in the bankruptcy court. *Id.* at 169–170. Beugen's compulsory counterclaim is clearly a core proceeding under this test.[5]

A compulsory counterclaim against a creditor that has asserted a claim is closely connected to the central bankruptcy function of determining claims. Numerous courts have held that a claim and a counterclaim arising out of the same transaction comprise a single legal controversy that should not be divided. *See Peters*, 275 F.2d at 925; *Majestic Radio*, 227 F.2d at 156; *Solar Mfg. Corp.*, 200 F.2d at 330–331; *In re Lombard–Wall, Inc.*, 48 B.R. 986, 990–91, 13 BCD 236 (S.D.N.Y.1985).

Counterclaims arising from the same transaction as the creditor's claim have also been traditionally adjudicated by non-Article III bankruptcy judges. Decisions under the Bankruptcy Act of 1898 held that non-Article III bankruptcy judges and referees could try such proceeding and enter final judgment subject only to traditional appellate review. *See Peters*, 275 F.2d at 925; *Majestic Radio*, 227 F.2d at 156; *Solar Mfg. Corp.*, 200 F.2d at 330–31. These decisions were cited with approval by the Supreme Court in *Katchen*. *See* 382 U.S. 326 n. 1, 335–36 & n. 12, 86 S.Ct. at 470 n. 1, 475–76 & n. 12. Furthermore, the Supreme Court has recently affirmed that *Katchen* is still good law and that *Katchen* permits a non-Article III judge to enter a binding judgment on a compulsory counterclaim such as that at issue here.

> [I]n *Katchen v. Landy* [citation omitted], this Court upheld a Bankruptcy referee's power to hear and decide state law coun-

---

**4.** With respect to the role of tradition, the First Circuit stated in *Arnold Print Works:*

> The Supreme Court has repeatedly turned to history and tradition to help define the type of adjudicatory proceeding that the Constitution reserves exclusively for Article III courts. In *Thomas* [*v. Union Carbide Agr. Products Co.,* 473 U.S. 568, 105 S.Ct. 3325, 87 L.Ed.2d 409 (1985) ], for example, the majority explicitly stated that *Marathon's* holding applied to "a *traditional* contract action arising under the state law." *Thomas,* 105 S.Ct. at 3335 (emphasis added); *see also Marathon,* 458 U.S. at 64, 102 S.Ct. at 2867–68 (describing the history of the Article III exception for territorial courts).

> The Court has indicated that it will examine closely congressional attempts to control the adjudication of "rights [that] were *historically* ... subject to resolution by Article III courts." *See Schor,* 106 S.Ct. at 3259 (emphasis added).

> If one examines the jurisdictional history of post-petition claims of the sort in issue here, one finds that they are not "traditional contract actions"; nor are they matters that "historically" have been decided only in the equivalent of Article III courts.

815 F.2d at 169. *See also In re Mankin,* 823 F.2d 1296, 1307–08 (9th Cir.1987).

**5.** Different considerations govern whether a proceeding controlled federal law may be a core proceeding. Generally, Congress has the power to classify as a core proceeding any proceeding involving congressionally created rights. This is so because:

> it is clear that when Congress creates a substantive federal right, it possesses substantial discretion to prescribe the manner in which that right may be adjudicated.

*Northern Pipeline,* 458 U.S. at 80, 102 S.Ct. at 2876. Moreover, a proceeding that is nominally governed by state law may properly be classified as a core proceeding on the basis that it involves congressionally created rights, where Congress has incorporated state law into a federal statute to further federal policies. *See In re Mankin,* 823 F.2d. 1296, 1307–09 (9th Cir.1987) (state-law fraudulent conveyance action is a core proceeding). The present case must be analyzed under the *Arnold Print Works* test, however, as it is apparently governed wholly by state law.

terclaims against a creditor who filed a claim in bankruptcy when those counterclaims arose out of the same transaction. *Commodity Futures,* 478 U.S. at —, 106 S.Ct. at 3258.

Nor is either party unreasonably forced to litigate Beugen's counterclaim in the bankruptcy court. Each party has consented to the bankruptcy court as an appropriate forum in which to litigate Taubman's claim against Beugen. Beugen did so by filing a bankruptcy petition; the bankruptcy court is the normal forum for determining creditors' claims against a debtor. *See Katchen,* 382 U.S. at 329–30, 86 S.Ct. at 472–73. Taubman consented to try its claim in the bankruptcy court by removing the state-court action that encompasses both its claim and Beugen's counterclaim. Each having consented to try Taubman's claim in the bankruptcy court, neither Taubman nor Beugen can complain about having to try Beugen's compulsory counterclaim—merely another part of the same legal controversy—in the same manner as the claim. *See Peters,* 275 F.2d at 925; *In re Sun West Distributors, Inc.,* 69 B.R. 861, 864–65, 15 BCD 649 (Bankr.S.D.Cal. 1987) (creditor consents to try compulsory counterclaim as a core proceeding by previously filing a claim against the estate).

The present case is distinguishable from *In re Castlerock Properties,* 781 F.2d 159 (9th Cir.1986). There the debtor filed an action in the bankruptcy court against a party that had not filed a claim against the estate. In response to the debtor's action, the defendant filed an action against the debtor. Although the defendant's action against the debtor was clearly a "claim" within the meaning of 11 U.S.C. § 101(4), the court held that the debtor's action could not be considered to be a core proceeding as a "counterclaim by the estate against a person filing a claim against the estate." The court reasoned it would be unfair to require the creditor to litigate debtor's action as a core proceeding, when the creditor had not chosen to participate in the bankruptcy proceedings in any way until after he was sued by debtor. *Id.* at 161–62. There is no such unfairness in the present case because, as explained above, both Taubman and Beugen have previously elected to litigate Taubman's claim in the bankruptcy court. *See Sun West Distributors,* 69 B.R. at 864, 15 BCD at 650–51; *In re BKW Systems, Inc.,* 66 B.R. 546, 547–48 (Bankr.D.N.H.1986).

I thus conclude that Beugen's counterclaim is a core proceeding.

## CONCLUSION

Because Debtor David E. Beugen's counterclaim against Creditor Taubman is a compulsory counterclaim arising from the same transaction as Taubman's claim against Beugen, there is no right to jury trial on Beugen's counterclaim, and that counterclaim may be tried as a core proceeding under 28 U.S.C. § 157(b)(2)(C).