**In re OTASCO, INC., I.D. No. 13–2855286, Debtor.**

**OTASCO, INC., Plaintiff,**

v.

**AMERICAN MANUFACTURERS MUTUAL INSURANCE COMPANY, American Motorists Insurance Company, and National Loss Control Service Corporation, Defendants.**

**Bankruptcy No. 88–03410–W.**
**Adv. No. 89–0285–W.**

United States Bankruptcy Court, N.D. Oklahoma.

Feb. 21, 1990.

See also, Bkrtcy., 111 B.R. 976.

Doerner, Stuart, Saunders, Daniel, & Anderson by Richard Foster, Tulsa, Okl., for plaintiff.

Savage, O'Donnell, Scott, McNulty & Affeldt by Timothy J. Olsen, Tulsa, Okl., for defendants.

## ORDER GRANTING PLAINTIFF'S MOTION TO STRIKE DEFENDANTS' JURY TRIAL DEMAND

MICKEY DAN WILSON, Chief Judge.

This matter comes on for hearing February 16, 1990, upon the Plaintiff's Motion to Strike Defendants' Jury Trial Demand. Plaintiff appears by its attorneys, Doerner, Stuart, Saunders, Daniel, & Anderson by Richard Foster, and Defendants' appear by their attorneys, Savage, O'Donnell, Scott, McNulty & Affeldt by Timothy J. Olsen, and the Court, upon consideration of the parties' arguments and upon the pleadings and briefs filed herein finds as follows:

Otasco required workers' compensation and liability insurance in its business. Otasco acquired insurance policies from defendants, who are affiliates of each other and are hereinafter referred to collectively as "the Kemper Group" or "Kemper." The Kemper policies covered claims arising in the years 1984, 1985; and provided for payment of such claims subject to a $50,-000. deductible. Kemper agreed to service claims against Otasco which were insured by the Kemper policies. Kemper paid off such claims, *including* the $50,000. deductible amount. By paying off the deductible amounts, Kemper (roughly) made loans to Otasco in the deductible amounts, and was entitled to be reimbursed for such advances. To get cash to reimburse Kemper for the deductible payments, Otasco (roughly) borrowed from its chief financer, AmeriTrust. AmeriTrust's loan to Otasco took the form of a letter of credit from AmeriTrust to Kemper. By the letter of credit, AmeriTrust promised to pay Kemper on Kemper's demand—but, by further agreement, amounts so paid by AmeriTrust to Kemper were charged by AmeriTrust against Otasco. AmeriTrust's loans to Otasco were secured by AmeriTrust's security interest in virtually all of Otasco's property; as AmeriTrust paid Kemper under the letter of credit, Otasco's secured debt to AmeriTrust enlarged in corresponding amount.

To recapitulate: When Otasco owed money damages to a tort claimant, those damages were paid for Otasco by Kemper, pursuant to insurance policies and servicing contracts between Otasco and Kemper; Kemper was reimbursed by AmeriTrust (in part—in the deductible amounts) pursuant to the letter of credit between Kemper and AmeriTrust; and AmeriTrust added these sums to its claims against Otasco, secured by all Otasco's property. Ultimately, of course, Otasco must pay its own tort claims; but instead of paying the tort claimants direct, Otasco obligates itself to pay AmeriTrust, and encumbers its own assets in the process. In short, unsecured tort claims against Otasco (by miscellaneous claimants) are converted to secured loan claims against Otasco (by AmeriTrust) by means of an interlocking chain of contracts: Otasco to Kemper, Kemper to AmeriTrust (the letter of credit), and AmeriTrust to Otasco. All of these deals are interrelated; all are devoted to satisfaction of Otasco's tort claims. Whenever Kemper

draws on the letter of credit, Otasco's unsecured tort debt gets smaller; but its secured debt to AmeriTrust gets bigger.

Chapter 11 bankruptcy has its own, statutorily-prescribed method of processing claims. Claims are generally divided into two types, secured and unsecured. Secured claims must be paid at least the value of their collateral; unsecured claims need not be paid in full and usually (where funds to pay them in full are short) are compromised in part. The limitation of repayment of both secured claims (to the value of collateral) and unsecured claims (to whatever cash may be left) is harsh but is the only way that losses can be cut and financial restructuring accomplished. Where assets are inadequate, the court can turn insolvency into solvency only by cutting debts. As a rule, like debts must be treated alike, and paid or cut alike—thus bankruptcy, even though harsh, is at least uniformly harsh, spreads losses evenly and fairly, and avoids adding the insult of discrimination to the injury of discharge.

Tort claims are a type of unsecured claim. As a rule, all unsecured claims—tort, trade, etc.—are treated alike, and get paid (or get unpaid) alike. At the very least, all tort claims should be similarly treated. But the Otasco–Kemper–AmeriTrust deal provides a very special treatment for tort claims arising 1984–1985 which happen to be subject to Kemper's insurance policies. As settled or otherwise determined, they are paid *in full* by Kemper–Kemper is reimbursed by AmeriTrust—AmeriTrust bills Otasco and enlarges its own secured claim against Otasco, eroding Otasco's equity in its own assets. Otasco's unencumbered assets (of which there are minimal) are its only source of cash to pay off *other*, less fortunate unsecured claims. In effect, the Otasco–Kemper–AmeriTrust deal effects discriminatory payment of some unsecured tort claims at the expense of all the rest. No inherent difference among the unsecured claims themselves justifies such disparate treatment. Such fortuitous favoritism is the antithesis of bankruptcy's equitable-distribution policy. Such violation of bankruptcy policy is what Otasco asks this Court to stop, or at least to remedy.

Kemper, in its motion to dismiss for lack of subject-matter jurisdiction, asserts that the discriminatory treatment of pre-petition unsecured claims, and the steady conversion of the bankruptcy estate's equity into secured debt to the frustration of Otasco's reorganization, is none of this Court's business—that this Court not only has no power to stop it or remedy it, but cannot even inquire into it! Kemper's motion to dismiss, based on such grounds, was denied as it deserved. Now Kemper offers a toned-down version of the same argument, as supporting its demand for jury trial.

The Otasco–Kemper–AmeriTrust deal is an integral part of the administration of this estate, the treatment of its creditors, and the allocation and disposition of its assets. The central link in the chain of agreements making up the Otasco–Kemper–AmeriTrust deal is the letter of credit between Kemper and AmeriTrust. If this Court has no power even to inquire into the use, or possible misuse, of this letter of credit, then this Court is helpless to dispose of its own estate and claims, helpless likewise to achieve that restructuring of debtor-creditor relations that is the essence of bankruptcy. See *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982).

There are other bankruptcy policies besides equality of distribution; and under certain circumstances, given the need to balance various interests, successful reorganization simply cannot be accomplished. The question before this Court is not whether Otasco is entitled to the relief it requests. The only question now before this Court is whether this Court, sitting in equity, may decide whether Otasco is entitled to the relief it requests.

■ Plaintiff's Count 1 asks for injunctive relief, prohibitory and mandatory. Injunction is equitable in nature; there can be no right to jury trial on a request for injunction. Defendants say there can be no injunctive relief where money damages provide an adequate remedy at law, and

that Otasco has itself asked for money damages, thereby confessing impropriety of injunction. This might be grounds for denying the injunction, but a motion to strike demand for jury trial is no time to try the merits of the complaint.

■ Count 3 asks for equitable subordination. This is not only equitable in nature but arises under Title 11, is part of the claims-allowance-and-payment process which is the very essence of disposition of the bankruptcy estate, and is as "core" as a proceeding could be; there can be no jury right as to this count either.

■ Count 5 is for avoidance and recovery of unauthorized post-petition transfers under § 549. This section deals with transfers of estate property, which transfers are "not authorized under this title or by the [bankruptcy] court," § 549(a)(2)(B). The cause arises under title 11, could not exist but in bankruptcy, and is intended to remedy improper administration of the case and estate. In form, it deals with rescission of contracts and with disposition of the bankruptcy *res*, i.e. is of equitable type, with damages an alternative to recovery of the *res* under § 550. This count is both equitable and "core," and there can be no jury right as to this count either.

■ Count 2 is frankly for money damages. However, it is alleged that the right to damages arises from two different, presumably complementary, sources: (a) violation of 11 U.S.C. §§ 327, 330, 503; and (b) breach of pre-petition insurance contracts. The alleged violation of 11 U.S.C. §§ 327, 330, 503 may or may not hold water; but this is not the time to try the merits. Those sections deal with employment of professionals by the estate; compensation of officers of the estate; and allowance of administrative expenses, a species of post-petition claim, against the estate. Such matters are purely "core"; there can be no jury right as to the issue of whether §§ 327, 330, 503 have been violated. An action for breach of pre-petition insurance contracts seems at first glance a non-core action which could have been brought in State courts absent bankruptcy. Yet, if the *breach* were post-petition, this court

could, under proper circumstances, estimate the amount of the claim against the estate, without a jury. And, if the *breach* were post-petition, administration of the estate is implicated. In any event, it appears that the same set of circumstances are alleged to give rise to both the violation of §§ 327, 330, 503 and breach of contracts. Since equity clearly has jurisdiction of the former, equity can assume jurisdiction of the latter to afford complete relief among the parties and prevent multiplicity of suits—no matter how "legal" in nature the latter may be.

■ Count 4 is frankly for money damages. However, it is alleged that the right to damages arises out of breach of a post-petition agreement to settle the disputes appearing in counts 1–3, equitable in nature. If no jury right exists as to counts 1–3, it is hard to imagine how a jury right could exist as to breach of an agreement to dispose of counts 1–3. The agreement is post-petition, an integral part of administration of the case and estate, and would have required court approval to be fully valid (or, at least, to prevent subsequent avoidability—this is not clear and bears on the merits of count 4). Defendants in effect propose that the court had power and duty to approve the agreement, but has no power to police its breach. If the validity and/or enforceability of the agreement depended on exercise of equity jurisdiction, then enforcement of the agreement (policing its breach) would be within equity jurisdiction, hence there is no right to jury trial.

Moreover, as Otasco points out in its Brief, "... Kemper has clearly voluntarily submitted to the inherent equity jurisdiction of this Court through Kemper's below-described actions in this bankruptcy case ... as follows:

1. On February 10, 1989, Kemper participated in a hearing on the Motion for Relief from Stay filed by Robert Earl Perrette, Sr. and Nancy Perrette. At the hearing, Kemper agreed to not request payment under the Letter of Credit except for Kemper's attorney's fees ...

968

2. In connection with Perrettes' Motion for Relief from Stay, Kemper filed a brief in this Court on February 8, 1989 and asked the Bankruptcy Court to determine the parties' rights in and to the Letter of Credit according to Kemper's brief.

3. On August 18, 1989, Otasco and Kemper filed in this bankruptcy case a Joint Motion for approval of a settlement agreement, pursuant to which Kemper asked the Court to approve Kemper's claims against Otasco.

4. On August 25, 1989, Kemper appeared at the hearing on the Joint Motion for approval of settlement and asked the bankruptcy Court to issue an order denying the approval of the Joint Motion.

5. On September 15, 1989, Kemper appeared at a subsequent hearing on the Debtor's Motion for Instructions. Kemper represented to the Bankruptcy Court that Kemper would not make any draws on the Letter of Credit for reimbursement of settlement payments made by Kemper to the various tort claimants, . . ."

Otasco's "Brief in Support of Plaintiff's Motion to Strike Defendants' Jury Trial Demand," pp. 4–5.

In *Granfinanciera, S.A. v. Nordberg,* —— U.S. ——, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989), the United States Supreme Court held that there was a right to jury trial where the cause was legal in nature *and* involved a matter of "private" and not "public" right; that a matter of public right can include a seemingly private right which is so integral to a public regulatory scheme as to be a matter appropriate for resolution by a special tribunal administering said public regulatory scheme; that, in bankruptcy, a cause is "private" when it has an adventitious relation to a reorganization proceeding, as indicated by (among other things) the assignment of the cause and its filing after confirmation of the reorganization plan; and that, in bankruptcy, a cause is "public" when it arises as part of the process of allowance and disallowance of claims, and in particular where one of the parties is the estate and the other party has filed a claim against the estate, citing

*Schoenthal v. Irving Trust Co.,* 287 U.S. 92, 53 S.Ct. 50, 77 L.Ed. 185 (1932). The matter now before this Court is not merely adventitious, a sort of afterthought, but is integral to the reorganization effort of Otasco, and is brought before this Court by the debtor-in-possession before filing (let alone confirmation) of any plan; and arises as part of the process of allowance and disallowance of claims. Defendants in fraudulent-transfer and preference actions (as in *Granfinanciera,* supra), may have no claims against the bankruptcy estate, since they have already satisfied themselves before bankruptcy from the debtor's dwindling assets; but the matter before this Court involves the post-petition disposition of unsecured, secured, and administrative-priority claims against Otasco's estate. Accordingly, *Granfinanciera,* supra, and *Schoenthal,* supra, both indicate that there is no right to jury trial in matters such as that now before this Court.

According, "Plaintiff's Motion to Strike Defendants' Jury Trial Demand" must be, and the same is hereby, granted.

AND IT IS SO ORDERED.