In re LION COUNTRY SAFARI, INC. CALIFORNIA, Debtor.

THE SPLASH, Plaintiff,

v.

The IRVINE COMPANY, Defendant.

Bankruptcy No. SA 90–04968JB.
Adv. No. SA 90–0748JB.

United States Bankruptcy Court, C.D. California.

March 8, 1991.

Richard N. Pachulski, Pachulski, Stang & Ziehl, Los Angeles, Cal., for debtor Lion Country Safari.

Brian C. Lysaght, O'Neill & Lysaght, Santa Monica, Cal., Sp. Litigation Counsel Lion Country Safari and The Splash.

Ron Maroko, Office of the U.S. Trustee, Santa Ana, Cal.

David B. Shapiro, Cummins & White, Los Angeles, Cal., for Marsh & McLennan.

Kathryn L. Koorenny, Gibson, Dunn & Crutcher, Los Angeles, Cal., for creditor Irvine Co.

John S. Gleason, Urland, Morello, Dunn & Maynard, Santa Ana, Cal., for Love's Enterprises, Inc.

Lloyd M. Segal, Segal & Sablowsky, Newport Beach, Cal., for The Splash.

## MEMORANDUM OF DECISION

JAMES N. BARR, Bankruptcy Judge.

The Debtor, Lion Country Safari, Inc., a third-party defendant and cross-claimant in this adversary proceeding, moved for a trial by jury following removal of this proceeding from state court. I will deny that motion for the reasons stated below.

## FACTUAL SUMMARY

The Splash, a subtenant of the Debtor, sued The Irvine Company (TIC) [the Debtor's lessor], and others, in the Orange County Superior Court in June, 1986, Case No. 491202. The Splash complaint alleges that TIC fraudulently obtained an agreement regarding insurance on The Splash's operation of a waterpark on the subleased land, and that TIC interfered with prospective business advantages to which The Splash was entitled by reason of its sublease.

TIC filed a third-party complaint against the Debtor for (1) breach of lease, (2) ex-

press, implied and equitable indemnity, (3) declaratory relief, (4) intentional and negligent misrepresentation, (5) an accounting of rents due under the lease and (6) bad faith denial of the existence of the lease.

The Debtor then filed a cross-complaint against TIC claiming to have been damaged in an amount in excess of one hundred fifty million dollars by acts of TIC, including (a) breach of the lease, (b) intentional interference with prospective economic advantage, (c) malicious prosecution, (d) declaratory relief as to the parties rights under the lease, and (e) restitution after rescission of the lease. The Debtor also filed a timely demand for a jury trial in the state court.[1]

The Debtor filed a voluntary Chapter 11 petition on July 23, 1990, shortly before the state court trial was to commence and immediately after TIC obtained an order from that court entitling it to attachment of the Debtor's assets. On August 29, 1990, TIC removed the entire state court action to this court pursuant to 28 U.S.C. § 1452. The Debtor immediately filed Emergency Ex Parte Motions for Abstention and Remand, which were denied by the District Court as I had recommended.[2] I ruled that the adversary proceeding was not a "core" matter [28 U.S.C. § 157].[3] In that regard, I found that the outcome of this adversary proceeding will likely have a substantial effect on the administration of this bankruptcy case but that none of the causes of action arose out of or in the case.

The Debtor argues it is entitled to a jury trial of its claims against TIC because they are claims at law for which a jury trial is guaranteed by the Seventh Amendment.[4]

Conversely, TIC argues (1) that proceedings in bankruptcy are proceedings in equity for which no jury trial is required and (2) the debtor's voluntary commencement of a bankruptcy case constitutes a waiver of its Seventh Amendment Constitutional right to a jury trial.

## JURISDICTION

This court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(a), under which the district courts have original and exclusive jurisdiction of all cases under Title 11; 28 U.S.C. § 157(a), authorizing the district courts to refer all Title 11 cases and proceedings to the bankruptcy judges for the district; and General Order No. 266, dated October 9, 1984 referring all Title 11 cases and proceedings to the bankruptcy judges for the Central District of California.

## PROCEDURAL NOTE

The motion is brought pursuant to Federal Rule of Civil Procedure 39(a)(2), which authorizes the court upon motion to determine whether a right to trial by jury in a matter exists under the Constitution and statutes of the United States. Although Rule 39 is not directly incorporated into the Bankruptcy Rules, our Local Bankruptcy Rule 107 provides that "[m]atters not specifically covered by these Local Bankruptcy Rules may be determined, if possible, by parallel or analogy to the F.R.Civ.P. ...." Inasmuch as Rule 39(a)(2) is not inconsistent with the Bankruptcy Rules or Local Rules, I will entertain the debtor's motion and render a decision accordingly.

1. A party's right to a jury trial will be determined under federal law in removed actions even if that party had a right to a jury trial in state court. F.R.Civ.P. 81(c) states that "[i]f at the time of removal all necessary pleadings have been served, a party *entitled to a trial by jury under Rule 38* shall be accorded it, if...." and thereafter addresses if such party must make a demand for a jury trial. F.R.Civ.P. 38(a) states that "[t]he right of trial by jury *as declared by the Seventh Amendment* ..... shall be preserved to the parties inviolate."

2. Rule 5011(b), at the time, required that I file with the district court a report (proposing findings of fact and conclusions of law) and a recommendation for disposition of a motion for abstention. Pursuant to Rule 9033, the district court then made a de novo review of the matter and denied the motion.

3. 28 U.S.C. § 157(b)(3) states that a bankruptcy judge shall determine, on the judge's motion or on timely motion of a party, whether a proceeding is a core or non-core proceeding or whether it is otherwise related to a case under title 11.

4. The Debtor does not demand a jury trial on TIC's claims against the Debtor and therefore that issue is not before me.

## STATEMENT OF THE ISSUE

Does the debtor have a right to a jury trial on its cross-claim against another party to an adversary proceeding in the bankruptcy court?

## DISCUSSION

The debtor had a limited right to a jury trial under 11 U.S.C. § 42(a), § 19(a) of the Bankruptcy Act which entitled an "alleged debtor" against whom an involuntary petition was filed, the right to a jury trial on the question of its insolvency and on the question of whether it had committed an "act of bankruptcy." Bankr.Act, § 19(a), 11 U.S.C. § 42(a).[5]

Courts interpreted the scope of the debtor's statutory right to a jury trial under § 19(a) very strictly. In *Matter of R.V. Smith, Inc.*, 38 F.Supp. 57, 58 (W.D.Okla. 1941), the court held that "all" questions other than the questions of insolvency and "acts of bankruptcy" are questions to be determined by the court. In the case of *In re Airmont Knitting*, 182 F.2d 740, 741 (C.A.2d 1950), the court cited numerous authorities to support its holding that the bankruptcy court was under no obligation to submit issues not enumerated in § 19(a) to a jury.

The Bankruptcy Reform Act of 1978 did not incorporate the language of § 19(a) of the Bankruptcy Act. However, from 1979 until 1987, Bankruptcy Rule 9015 stated that "[i]ssues triable of right by jury shall, if timely demanded, be by jury ..." The Advisory Committee note to Rule 9015 referred the reader to 28 U.S.C. § 1480 which ostensibly gave a party the right to a jury trial if such right existed under the Bankruptcy Act.

However, 28 U.S.C. § 1480 was apparently, though not specifically, repealed by the 1984 amendments to the Bankruptcy Code [See discussion in *American Universal Insurance Co. v. Pugh*, 821 F.2d 1352, 1354–55 (9th Cir.1987)], and Bankruptcy Rule 9015 was abrogated by the 1987 Amendments to the Bankruptcy Rules. The Advisory Committee note to the 1987 amendment states that "[i]n the event the court of appeals or the Supreme Court define a right to jury trial in any bankruptcy matters, a local rule in substantially the same form of Rule 9015 can be adopted pending amendments of these rules." Thus, Congress left it to the courts to determine the applicability of the Seventh Amendment in bankruptcy cases.

In the recent case of *In re Beugen*, 81 B.R. 994 (Bkrtcy.N.D.Cal.1988), a prepetition dispute arose between the debtor-in-possession (hereinafter "DIP") and a creditor concerning a commercial lease. The creditor, lessor, filed a complaint in state court against the DIP seeking possession of the real property and overdue rent. The DIP filed a counterclaim and later filed a petition under Chapter 11. The creditor then removed the entire action to the bankruptcy court where the debtor moved for a jury trial.

In that case, Judge Carlson noted that numerous courts have held that bankruptcy courts could try as a "summary proceeding" any counterclaim asserted by a trustee against a creditor which had filed a claim, so long as the counterclaim arose from the same transaction as the creditor's claim. *Id.* at 998 (citing *Peters v. Lines*, 275 F.2d 919 (9th Cir.1960); *In re Majestic Radio & Television Corp.*, 227 F.2d 152, 156 (7th Cir.1955), *cert. denied*, 350 U.S. 995, 76 S.Ct. 545, 100 L.Ed. 860 (1956); *In*

---

5. Since enactment of our first federal bankruptcy law, i.e., the Bankruptcy Act of 1800 [Act of April 4, 1880, ch. 19, 2 Stat. 19 (repealed 1803), through the 1987 abrogation of Bankruptcy Rule 9015, Congress made provision for the Debtor's right to a jury trial in limited situations. [See John J. McCoid, II, *Right To Jury Trial In Bankruptcy: Granfinanciera, S.A. v. Nordberg*, Vol. 65, Dedication Issue, The American Bankruptcy Law Journal, at pp. 33—40 (1991).] [See also John E. Mathews, *The Right*

*To Jury Trial In Bankruptcy Courts: Constitutional Implications In The Wake Of Granfinanciera, S.A. v. Nordberg*, Vol. 65, No. 1, Am.Bankr. L.J., at p. 48 (1991).]

It is historically interesting, if not significant here, that "... Congress insisted on the right to a jury trial on claim validity under our first three bankruptcy acts." McCoid, *Right to Jury Trial In Bankruptcy. Id.* at 38. Since 1986, there has been no such specific provision in bankruptcy law.

re Solar Mfg. Corp., 200 F.2d 327, 330–31 (3d Cir.1952), cert. denied, 345 U.S. 940, 73 S.Ct. 831, 97 L.Ed. 1366 (1953)). After analyzing the reasoning behind those decisions and others, Judge Carlson concluded that a debtor's counterclaim arising from the same transaction as the creditor's claim against the estate may be decided in the same manner as the claim, because it is merely another part of the same legal controversy. Id. at 1001. Reason and precedent compel me to accept that rule.

■ Therefore, I must determine whether the Debtor's claim against TIC falls within the definition of "compulsory counterclaim" found in the Federal Rules of Civil Procedure 13(a), incorporated by Bankruptcy Rule 7013. That rule defines a compulsory counterclaim as a claim which arises out of the transaction or occurrence that is the subject matter of the opposing party's claim. In determining whether two claims arise out of the same transaction or occurrence, the Ninth Circuit applies the "logical relationship" test. Pochiro v. Prudential Ins. Co. of Am., 827 F.2d 1246, 1249 (9th Cir.1987); In re Bulson, 117 B.R. 537, 541 (9th Cir. BAP 1990). This test calls for me to determine if the essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all issues should be resolved in one lawsuit. Id. A logical relationship exists when the counterclaim arises from the same aggregate set of operative facts as the initial claim, in that the same operative facts serve as the basis of both claims or the aggregate core of facts upon which the claim rests activates additional legal rights otherwise dormant in the defendant. In re Lile, 96 B.R. 81, 85 (Bkrtcy.S.D.Tex.1989) (quoting U.S. v. Aronson, 617 F.2d 119 (5th Cir.1980)); Plant v. Blazer Fin. Servs., 598 F.2d 1357, 1361 (5th Cir.1979)) Further, "the same transaction or occurrence" should be liberally interpreted under Fed.R.Civ.P. 13(a). Lile, 96 B.R. at 85.

■ The Debtor's claim against TIC falls within the description of "compulsory cross-claim" found in Bankruptcy Rule 7013; for it focuses on TIC's alleged breach of the same lease which TIC claims the Debtor breached. Following the reasoning in Beugen, I am led to the conclusion that the Debtor is not entitled to a jury trial on its cross-claim against TIC.

However, because entitlement to jury trials in bankruptcy courts has recently been addressed by the Supreme Court,[6] and because the subject of jury trial entitlement in bankruptcy courts is still not settled, I have elected to examine the Debtor's rights in light of that recent authority as well.

First, for clarification purposes, I note what the Supreme Court has not decided in those recent opinions. In Granfinanciera, S.A. v. Nordberg, 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989), (the holding of which is discussed extensively below), the Supreme Court noted that their decision does not address whether the current statutory jury trial provision, 28 U.S.C. § 1411 (1982 Ed., Supp.IV) [28 U.S.C.S. § 1411], permits bankruptcy courts to conduct jury trials. It also declined to express a view, as to whether the Seventh Amendment or Article III of the Constitution permits jury trials to be held before non-Article III bankruptcy judges subject to district court oversight (pursuant to the 1984 Amendments). Id. at 64, 109 S.Ct. at 2802, 106 L.Ed.2d at 55. Although the Court has since rendered another opinion on the topic of entitlement to a jury trial in the bankruptcy court, i.e., In re Langenkamp, —— U.S. ——, 111 S.Ct. 330, 112 L.Ed.2d 343 (1990), it did not even refer to those issues in that opinion.[7] At least four circuit

---

**6.** See Granfinanciera, S.A. v. Nordberg, 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989); and In re Langenkamp, — U.S. ——, 111 S.Ct. 330, 112 L.Ed.2d 343 (1990).

**7.** In the Granfinanciera case, the Court carefully limited its decision to the specific action before it, i.e., a fraudulent transfer action brought under 11 U.S.C. § 548. In doing so, it noted that the tag "core proceeding" is not determinative of a non-debtor's rights under the Seventh Amendment, but did not define which "core" matters would fit within its holding there. The Langenkamp decision involved an action to recover an alleged preferential transfer, but because the creditor was found to have consented to trial without jury (i.e., by filing a proof of claim in the bankruptcy court), the court there did have

courts have addressed those questions,[8] but I need not do so here, for my authority to conduct a jury trial in this adversary proceeding has not been questioned by any party.

In *Granfinanciera*, 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989), the Court analyzed the right to a jury trial solely as a question of entitlement under the Seventh Amendment to the Constitution.[9] In doing so, the Court performed a three-prong analysis: (1) compare the statutory action brought in the courts of England prior to the merger of the courts of law and equity and (2) examine the remedy sought and whether it is legal or equitable in nature, then (3) decide whether Congress may assign and has assigned resolution of the relevant claim to a non-Article III adjudicative body that does not use a jury as a fact finder. *Id.* at 52–55, 109 S.Ct. at 2796–2797, 106 L.Ed.2d at 41 (quoting *Tull v. United States*, 481 U.S. 412, 417–418, 107 S.Ct. 1831, 1835, 95 L.Ed.2d 365 (1987)). The Court's recitation of a third consideration was merely recognition that there is an inescapable tie between the determination of whether a litigant is constitutionally entitled to a jury trial in a given proceeding before the bankruptcy court, and the question of whether Congress may and should assign the adjudication of such proceeding to the bankruptcy court.[10]

to delve into the nature of the proceeding to determine the creditor's Seventh Amendment rights.

**8.** The Second Circuit in *In re Ben Cooper, Inc.*, 896 F.2d 1394, 1402 (2d Cir.1990) held that despite the lack of specific statutory authority, Congress impliedly conferred the power to preside over jury trials upon bankruptcy judges. The Eighth Circuit in *In re United Missouri Bank of Kansas City, N.A.*, 901 F.2d 1449, 1451 (8th Cir.1990) held that a bankruptcy judge does not have the express or implied statutory authority to conduct jury trials. The Ninth Circuit in *In re Cinematronics, Inc.*, 916 F.2d 1444, 1448 (9th Cir.1990) held that since the Seventh Amendment provides that "no fact tried by a jury shall be otherwise reexamined in any Court of the United States, other than according to the rules of common law", grave Seventh Amendment problems would arise if a jury trial is conducted in "non-core" matters by the bankruptcy court. The Tenth Circuit in *In re Kaiser Steel Corp.*, 911 F.2d 380, 382 (10th Cir.1990) held that bankruptcy judges lack the power to conduct jury trials over congressionally designated "core" claims.

**9.** One commentator recently noted that "*Granfinanciera* was the Court's first effort to untangle the interconnections between Article III and the Seventh Amendment in bankruptcy." Douglas G. Baird, *Jury Trials After Granfinanciera*, Vol. 65, No. 1, Am.Bankr.L.J., at p. 5 (1991). That is a valid observation, even though the Court there said, emphatically, "The sole issue before us is whether the Seventh Amendment confers on petitioners a right to a jury trial in the face of Congress' decision to allow a non-Article III tribunal to adjudicate the claims against them." *Granfinanciera*, 492 U.S. at 50, 109 S.Ct. at 2794–95, 106 L.Ed.2d at 46.

The Court did overlay its conclusions as to the application of Article III strictures, upon its Seventh Amendment analysis, but reasoned that doing so was merely another facet of the latter analysis. In that regard the Court said:

"... if a statutory cause of action is legal in nature, the question of whether the Seventh Amendment permits Congress to assign its adjudication to a tribunal that does not employ juries as fact finders requires the same answer as the question whether Article III allows Congress to assign adjudication of that cause of action to a non-Article III tribunal. For if a statutory cause of action, such as respondent's right to recover a fraudulent conveyance under 11 U.S.C. § 548(a)(2) [11 U.S.C.S. § 548(a)(2)] is not a "public right" for Article III purposes, then Congress may not assign its adjudication to a specialized non-Article III court lacking "the essential attributes of the judicial power. [citations omitted.] And if the action must be tried under the auspices of an Article III court, then the Seventh Amendment affords the parties a right to a jury trial whenever the cause of action is legal in nature. Conversely, if Congress may assign the adjudication of a statutory cause of action to a non-Article III tribunal, then the Seventh Amendment poses no independent bar to the adjudication of that action by a non-jury fact finder." *Id.* 492 U.S. at 53–54, 109 S.Ct. at 2796, 106 L.Ed.2d at 48.

**10.** In *Granfinanciera*, 492 U.S. at 42, n. 4, 109 S.Ct. at 2790; n. 4, 106 L.Ed.2d at 41, n. 4, the Court noted that the "quite distinct inquiry into whether Congress has permissibly entrusted the resolution of certain disputes to an administrative agency or specialized court of equity, and whether jury trials would impair the functioning of the legislative scheme" is appropriate because such an inquiry "appears to be what the Court contemplated when in *Ross v. Bernhard*, 396 US 531, 538, n. 10, 24 L Ed 2d 729, 90 S Ct 733 [738, n. 10] (1970), it identified "the practical abilities and limitations of juries'" as an additional factor to be consulted in determining whether the Seventh Amendment confers a jury trial right.

After concluding that a fraudulent transfer action should be characterized as legal and not equitable in nature, the Court held that a creditor's right to a jury trial in such an action in the bankruptcy court depends on whether that creditor has submitted a claim against the bankruptcy estate. *Id.* 492 U.S. at 59–60, and n. 14, 109 S.Ct. at 2798–2799, and n. 14, 106 L.Ed.2d at 51–52, and n. 14. The creditor/defendant in *Granfinanciera* had not done so and the Court found no other basis for concluding that the trustee's action against the creditor was "integral to the restructuring of debtor-creditor relations." [11] It then upheld the creditor's right to a jury trial in that proceeding. *Id.* at 80–81, 109 S.Ct. at 2810–2811, 106 L.Ed.2d at 55.[12]

In the more recent case of *Langenkamp v. Culp,* — U.S. —, 111 S.Ct. 330, 112 L.Ed.2d 343 (1990), a trustee sued to recover alleged preferential transfers from creditors who had submitted claims against the bankruptcy estate. The creditor demanded a jury trial on the trustee's preference action. The Court denied the creditor a trial by jury because it had invoked the equitable jurisdiction of the bankruptcy court by filing a claim. *Id.* at —, 111 S.Ct. at 331, 112 L.Ed.2d at 344.

The summary reasoning employed by the *Langenkamp* Court teaches the correct and most efficient approach to be applied when analyzing a party's right to trial by jury in the bankruptcy court. In *Granfinanciera,* the Court performed a detailed Seventh Amendment and Article III analysis to determine if the right to trial by jury existed there. *Id.* 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989). In *Langenkamp,* the creditor seeking a jury trial had filed a claim. — U.S. —, 111 S.Ct. 330, 112 L.Ed.2d 343 (1990). Drawing on its reasoning in *Granfinanciera,* the Court focused on the questions of whether "the creditor subjected itself to the bankruptcy court's equitable power," and whether the creditor's claim coupled with the trustee's preference action, became "integral to the restructuring of the debtor-creditor relationship through the bankruptcy court's equity jurisdiction." *Id.* at —, 111 S.Ct. at 331, 112 L.Ed.2d at 344.

The lesson there, is that a court faced with the question of entitlement to trial by jury in the bankruptcy court, at least in so far as it is a creditor's right at stake, should examine first the question of whether the one who would invoke the right has submitted itself to the equitable jurisdiction of that court. If the answer to that question is affirmative, the next inquiry is whether the action in which the right would be exercised "arises as part of the process of allowance and disallowance of claims" or

On the question of whether Congress has permissibly assigned to the bankruptcy court trials of fraudulent transfer actions (such as that before the bankruptcy court in *Granfinanciera),* the Court went into an extensive analysis of "public" and "private" rights, and their previous decisions on that point. (*See infra* note 9 at p. 570.) But it also noted that "The sole issue before us is whether the Seventh Amendment confers on petitioners a right to a jury trial in the face of Congress' decision to allow a non–Article III tribunal to adjudicate the claims against them." *Id.* 492 U.S. at 50, 109 S.Ct. at 2795, 106 L.Ed.2d at 46.

On the question of whether jury trials would impair the functioning of the bankruptcy courts (i.e., the "legislative scheme"), the Court noted: "Nor can Congress' assignment [of fraudulent conveyance actions to the bankruptcy court] be justified on the ground that jury trials of [such actions] would 'go far to dismantle the statutory scheme' [citations omitted] or that bankruptcy proceedings have been placed in 'an administrative forum with which the jury would be incompatible.'" *Id.* 492 U.S. at 61, 109 S.Ct. at 2800,

106 L.Ed.2d at 53. The Court then concluded, more specifically, that "... one cannot easily say that 'the jury would be incompatible' with the bankruptcy proceedings ..." *Id.* 492 U.S. at 61–62, 109 S.Ct. at 2801, 106 L.Ed.2d at 54.

**11.** Specifically, the Court said, "Because petitioners here ... have not filed claims against the estate, respondent's fraudulent conveyance action does not arise 'as part of the process of allowance and disallowance of claims.' Nor is that action integral to the restructuring of debtor-creditor relations. Congress therefore cannot divest petitioners of their Seventh Amendment right to a trial by jury." *Granfinanciera,* 492 U.S. at 58–59, 109 S.Ct. at 2799, 106 L.Ed.2d at 51.

**12.** It is not clear from the wording chosen by the Court in *Granfinanciera* whether there are "actions integral to the restructuring of debtor-creditor relationships", *other* than filing a claim, which would constitute submission to the equitable jurisdiction of the bankruptcy court. I need not delve more deeply into that here.

is otherwise "integral to the restructuring of debtor-creditor relations."

I can find no justification in law or reason why the same analytical process should not be applied to the determination of a debtor's right to trial by jury in actions before this court. Therefore, I will look first to whether the Debtor voluntarily submitted itself to the equitable jurisdiction of this court as the creditor did in *Langenkamp*.

■ The filing of a proof of claim by a creditor is "voluntary" in the sense that a creditor is not required to file a proof of claim, and pursue it within the bankruptcy court.[13] Similarly, the filing of a bankruptcy petition by a debtor is a voluntary act which I refer to as "the prime trigger" of the equitable jurisdiction of the bankruptcy court.[14] It was the Debtor's own petition for relief initiating this bankruptcy case, which cast the net entangling TIC and, in various ways, all of the Debtor's creditors in a claims allowance process. In other words, the Debtor's voluntary act of filing its petition for relief, triggered the process of allowing or disallowing all claims, including that of TIC.

In the context of resolution of claims, once a proof of claim is filed or deemed filed it is deemed allowed and no hearing thereon will be held unless a party in interest objects to allowance on one of the statutory grounds enunciated in § 502(b).[15]

Here the Debtor has objected to allowance of TIC's claim by the devise of an answer and assertion of a cross-claim filed in response to TIC's Third Party Complaint. Within that context, the Debtor's motion for jury trial is properly brought. However, it is not the filing of the answer or cross-claim which invoked this court's equitable jurisdiction. Those acts give a frame of reference to the jury trial issue and provide proof that this adversary proceeding is integral to the restructuring of the debtor-creditor relations. It was the act of voluntarily initiating this bankruptcy case which invoked my equitable jurisdiction, or more specifically, the jurisdiction to adjust the debtor's financial relations with its creditors.

With regard to the question of whether the Debtor's cross-claim against TIC is integral to that adjusting or "restructuring" process, I again turn to the Supreme Court's opinion in *Langenkamp v. Culp*, — U.S. —, 111 S.Ct. 330, 112 L.Ed.2d 343 (1990); this time for analogy. There the court focused on the duality of actions between the debtor and creditor. The court stated that the creditor's claim and the ensuing preference action by the trustee were integral to the restructuring of the debtor-creditor relationship within the bankruptcy court's equity jurisdiction. *Id.* at —, 111 S.Ct. at 331, 112 L.Ed.2d at 344. In this case, TIC's act of removing the state court suit to the bankruptcy court is tantamount to the filing of a proof of claim against the Debtor seeking recovery from the Debtor's bankruptcy estate.[16] The trial of that action together with the debtor's cross-claim is integral to the restructuring of that debtor-creditor relation-

---

13. The sole purpose served by filing a proof of claim in a bankruptcy case, from the creditor's standpoint, is to obtain a share of the debtor's bankruptcy estate. However, although there are provisions of the Bankruptcy Code by which claims are "deemed filed" [i.e., § 1111(a) ], there is nothing in the Code which compels a creditor to voluntarily seek recovery from the estate. The *Granfinanciera* and *Langenkamp* decisions are predicated on that truism.

14. The issue of whether the filing of an involuntary petition affects the debtor's right to a jury trial is not before me and thus I will not address it. The abrogation of Bankruptcy Rule 9015 has left determination of this issue to the court of appeals and the Supreme Court. *See* Advisory Committee note to the 1987 Amendment to the Bankruptcy Rules. However, the issue has yet to be addressed by any court.

15. Every claim must go through the allowance process before its holder is entitled to a distribution from the estate on account of its claim. 11 U.S.C. § 502. In Chapter 11 cases, certain claims listed on the debtor's schedules are deemed filed, a status that meets the filing requirement. *See* 11 U.S.C. § 1111(a) and Bankruptcy Rule 3003(b). When there is no deemed filing, Bankruptcy Rule 3002(c) prescribes time limits for filing claims in Chapters 7 and 13. In Chapter 11, Bankruptcy Rule 3003(c)(3) authorizes the court in each case to set a specific date after which the filing of claims is barred.

16. Bankruptcy Rule 3001 states that a proof of claim is a written statement setting forth a creditor's claim. Case law, most notably in this circuit, has developed the equitable doctrine of an "informal" proof of claim. Although the

ship; for TIC asserts the largest unsecured claim against the Debtor in this case and the Debtor has admitted that the resolution of this litigation is crucial to its reorganization efforts.

## CONCLUSION

In summary, the Debtor's filing of the bankruptcy petition in this case triggered the process of allowance and disallowance of claims and thus invoked my equitable jurisdiction; the determination of the debtor's cross-claim and TIC's third-party complaint are integral to the restructuring of the debtor-creditor relationship; and both parties' claims arise out of the same transaction. Therefore, the Debtor is not entitled to a jury trial on the Debtor's cross-claim in this court.

language employed differs from case to case, most courts have employed some form of the following test:

> "For a document to constitute an informal proof of a claim, a three-prong test must be satisfied; the document must state an explicit demand showing: 1) the nature of the claim, 2) the amount of the claim against the estate, and 3) must evidence an intent to hold the debtor liable." *In re Nucorp Energy, Inc.* 52 B.R. 843, 846 (Bkrtcy.S.D.Ca.1985).

Many courts have held that the filing of a complaint constitutes an informal proof of claim. *In re Sambo's Restaurants,* 754 F.2d 811 (9th Cir.1985) (filing of a wrongful death action in district court and subsequent transfer to the bankruptcy court held sufficient to constitute a proof of claim); *In re Sherret,* 58 B.R. 750 (Bkrtcy.W.D.La.1986) (adversary complaint filed by creditor constituted informal proof of claim); *In re Duncan,* 55 B.R. 433 (Bkrtcy.M.D.Ala.1985) (cross claim filed by a creditor sufficient to comply with Rule 3001). I find no reason to distinguish this case from those precedents and well-reasoned authorities. Therefore, TIC has filed a proof of claim against the Debtor's bankruptcy estate.