In re **ROBIN HOOD, INC.,** d/b/a **Sherwood Forest Utility;** d/b/a **Sherwood Forest Mini Storage;** d/b/a **Sherwood Forest;** d/b/a **Maid Marion's Gallery, Debtor.**

**GEORGIA NEUROSURGICAL CLINIC PROFIT SHARING PLAN, Appellant,**

v.

Marc **RUDOW, Trustee for Robin Hood, Inc.,** a/k/a, d/b/a **Maid Marion's Gallery, Sherwood Forest, Sherwood Forest Mini Storage, and Sherwood Forest Utility, Appellee.**

Civil No. 1:93CV126.

United States District Court,
W.D. North Carolina,
Asheville Division.

June 28, 1995.

125

**126**

David G. Gray, Westall, Gray & Connolly, Asheville, NC, for debtor.

Waymon L. Morris, Hendersonville, NC, for appellant.

Marjorie Rowe Mann, Roberts, Stevens & Cogburn, Asheville, NC, for appellee.

### MEMORANDUM AND ORDER

THORNBURG, District Judge.

**THIS MATTER** is before the Court on appeal from the Order of U.S. Bankruptcy Court Judge George R. Hodges, filed July 8, 1993. For the reasons stated below, the order of the Bankruptcy Court is affirmed.

### I. STANDARD OF REVIEW

■ The decision of the Bankruptcy Court is reviewed by a two-step process. Reversal of the findings of fact of the Bankruptcy Court may occur only where the findings are clearly erroneous. *In re Collins*, 1993 WL 22001, 1993 U.S.App. LEXIS 1928 (4th Cir.1993) (citing *Williamson v. Fireman's Fund Insurance Co.*, 828 F.2d 249 (4th Cir.1987)); *In re Bryson Properties, XVIII*, 961 F.2d 496 (4th Cir.), *cert. denied*, 506 U.S. 866, 113 S.Ct. 191, 121 L.Ed.2d 134 (1992). The conclusions of law of the Bankruptcy Court are reviewed *de novo*. *In re Bryson Properties*, 961 F.2d at 499.

■ Findings of fact are clearly erroneous "when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *In re Green*, 934 F.2d 568, 570 (4th Cir.1991) (citing *In re First Federal Corp.*, 42 B.R. 682 (Bankr.W.D.Va.1984)). As stated by the Supreme Court:

> If the [lower court's] account of the evidence is plausible in light of the record viewed in its entirety, the [appellate court] may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.

*In re Sherwood Ford, Inc.*, 1992 WL 295951 at *2, 1992 U.S. Dist. LEXIS 15516 at *6 (D.Md.1992) (quoting *Anderson v. Bessemer City*, 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985)).

### II. FINDINGS OF FACT

This Court has reviewed the record on appeal *de novo*, including the deposition transcripts and transcript of the hearing conducted before Judge Hodges. The findings of fact of the Bankruptcy Court are not clearly

erroneous. To that end, the facts are briefly summarized.

Robin Hood, Inc. (Debtor) filed a petition for relief pursuant to Chapter 11 of the Bankruptcy Code in 1990. The assets of the estate included an approximately 80 acre parcel of real estate located in Brevard, North Carolina. The trustee of the estate, Marc Rudow, was responsible for liquidating certain estate assets in order to pay creditors, including this parcel. To that end, he listed the parcel with Melton Company Realtors; and on August 24, 1992, an offer was received from Georgia Neurosurgical Clinic Profit Sharing Plan (Appellant), by Grover L. Anderson (Anderson) as trustee. The offer was accepted by Rudow on August 26, 1992, and subsequently approved by the Bankruptcy Court.

The contract provided for a purchase price of $212,000 based on 85 acres, with the actual price to be adjusted at the same price per acre upon receipt of a survey showing the exact acreage. The contract also contained the following provision inserted by Rudow and accepted by the buyer:

> An actual field survey will be done on the above property at Buyer's expense to be completed within 21 days of contract execution. After survey is completed and lines marked, Buyer will have 10 days to inspect the property lines. If Buyer is not satisfied, he may declare this contract null and void and have earnest money returned to him.

**Exhibit A, Offer to Purchase and Contract dated August 26, 1992, *attached* to Trustee's Motion of June 16, 1993.**

In addition, the contract provided that if the "offer is accepted and Buyer breaches this Contract, then the earnest money shall be forfeited". *Id.*

The earnest money was deposited with Melton Company Realtors. Although the contract provided for the survey to be prepared within 21 days of August 26, 1992, it was not completed within this time period. On October 19, 1992, well outside the 31–day period provided for in the contract, Anderson, acting on behalf of Appellant, at-

tempted to terminate the contract. This action was taken before Anderson had actually received the survey in question because Anderson had become disillusioned with the deal.[1] **Transcript of Hearing on July 1, 1993, at 64.**

Anderson testified at the Bankruptcy Court hearing that he understood Steven Owen, a realtor working with Anderson, had undertaken to obtain the survey. *Id.*, at 67. He also testified that he was under the impression that Owen had obtained an oral extension of time within which to obtain the survey. *Id.*, at 70. He further testified about his extensive experience in real estate, including his concern that the extension had not been placed in writing as was the custom. *Id.*, at 63.

Mr. Owen also testified, but stated that when he inquired about an extension from the listing realtor, no formal commitment was given. That realtor simply urged Owen to get the deal completed. *Id.*, at 53.

Rudow, on behalf of the estate, rejected Anderson's attempt to declare the contract terminated and requested performance. In December 1992, Rudow moved for specific performance because nothing had been heard from Anderson. In January 1993, Anderson responded to the motion and asserted a counterclaim for the return of the money. At the same time as the counterclaim was filed in Bankruptcy Court, Anderson initiated a state court action against Melton Company Realtors for the return of the deposit.

In the interim, Rudow received and accepted an offer from a new buyer of the property. The survey completed for that sale showed the acreage to be 79.66 acres and the property was sold at $2,400 per acre for a total price of $191,184. If the contract with Anderson had closed, the price per acre would have been $2,494.11 for a total price of $198,680.80. Because Rudow negotiated with the realtors for a reduced commission on the sale, the actual difference in the two contract prices was $2,923.44.

As a result of the new contract, Rudow moved for leave to withdraw his motion for

---

1. Dr. Anderson was the sole beneficiary of the     trust plan.

specific performance of the Anderson contract. The Court allowed this motion and instructed the trustee to commence an adversary proceeding. Rudow then moved the Bankruptcy Court *ex parte* for permission to proceed with the action through the procedural method of a motion in order to expedite the conclusion of the matter. Rudow, although labeling the motion *ex parte,* served a copy thereof on Appellant's counsel. Counsel did not object and the Court granted the motion, deeming all matters including Georgia Neurosurgical's counterclaim filed and ready for resolution at a non-jury hearing.[2] **Order, entered June 14, 1993.**

The Bankruptcy Court found that Georgia Neurosurgical breached the contract and ordered the $10,000 earnest money forfeited to the trustee on behalf of the bankrupt estate as liquidated damages pursuant to the terms of the contract.

### III. DISCUSSION

The Appellant's issues on appeal are discussed sequentially.

### 1. The Bankruptcy Court erred by denying Appellant a jury trial.

■ In response to the trustee's motion to compel specific performance, Appellant filed a counterclaim against the trustee for breach of contract and requested a jury trial.

The Supreme Court has stated the analysis for determining the right to a jury trial in bankruptcy proceedings.

First, we compare the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity. Second, we examine the remedy sought and determine whether it is legal or equitable in nature. The second stage of this analysis is more important than the first. If, on balance, these two factors indicate that a party is entitled to a jury trial under the Seventh Amendment, we must decide whether Congress may assign and has assigned resolution of the relevant claim to a non-Article

III adjudicative body that does not use a jury as a factfinder.

*Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 42, 109 S.Ct. 2782, 2790, 106 L.Ed.2d 26 (1989) (citations omitted).

Appellant's counterclaim based on breach of contract would be a legal matter in 18th-century England. Moreover, the remedy sought appears at first blush to be legal in that monetary relief is demanded. However, Appellant demands the return of the earnest money and a declaration that the contract between the parties is void.

Notwithstanding the superficial resemblance of Appellants' claim to an action for common law [breach of contract], their claim is fundamentally equitable in nature, comparable to an action for breach of trust seeking to compel the trustee to redress the breach.

*In re Hutchinson,* 5 F.3d 750, 757 (4th Cir. 1993). As such, no jury trial right exists in bankruptcy court.

■ In addition, when a creditor files a counterclaim against a debtor in response to an adversary proceeding brought in bankruptcy court, he has succumbed to the jurisdiction of that court and waived his right to a jury trial. *In re Glen Eagle Square, Inc.,* 132 B.R. 106, 112 (Bankr.E.D.Pa.), *aff'd,* 132 B.R. 115 (E.D.Pa.1991); *see also, Bayless v. Crabtree,* 108 B.R. 299, 304–05 (W.D.Okla. 1989), *aff'd without op.,* 930 F.2d 32 (10th Cir.1991); *In re Marshland Dev., Inc.,* 129 B.R. 626, 631 (Bankr.N.D.Cal.1991) ("[A] **counterclaim arising from the same transaction as the creditor's claim against the estate may be decided in the same manner as the claim, because it is merely another part of the same legal controversy."** Thus, **such a proceeding becomes the "functional equivalent of a claims objection proceeding");** *In re Lion Country Safari, Inc.,* 124 B.R. 566, 571–72 (Bankr.C.D.Cal.1991).

Moreover, Appellant contracted with the trustee in bankruptcy, received approval of the bankruptcy court, and understood the

**2.** The Bankruptcy Court had previously denied Appellant's motion for a jury trial. **Transcript of** **Hearing conducted May 20, 1993 at 7–8.**

sale of the parcel was for the benefit of the bankrupt estate.

> [I]t is hard to imagine how a jury right could exist as to breach of [such a contract]. The agreement is post-petition, an integral part of administration of the case and estate, and . . . required court approval to be fully valid . . . [Appellant] in effect propose[s] that the court had power and duty to approve the agreement, but has no power to police its breach. If the validity and/or enforceability of the agreement depended on exercise of equity jurisdiction, then enforcement of the agreement (policing its breach) would be within equity jurisdiction, hence there is no right to jury trial.

*In re Otasco, Inc.,* 110 B.R. 964, 967 (Bankr. N.D.Okla.1990).

### 2. Appellant was entitled to notice and a hearing on the trustee's *ex parte* motion to proceed by motion instead of adversary proceeding.

■ Appellant argues, albeit without great force, that the Bankruptcy Court exceeded its authority in entertaining an *ex parte* motion from the trustee. This argument is spurious because Appellant received notice of the *ex parte* motion and declined to object or otherwise appear in connection with it.

Moreover, although counsel argues that the Order granting the motion deprived him of the opportunity to prepare for the hearing, he cites no examples of prejudice. Nor did he move for a continuance. Indeed, the record shows counsel was advised by the Court on May 20, 1993, that a non-jury trial of the matter would be held on July 1, 1993. **Transcript of May 20, 1993, hearing at 7.**

### 3. The Bankruptcy Court erred in holding that Appellant breached the contract for the purchase of the parcel.

■ Appellant has raised a series of arguments to support his theory that the right to terminate the contract did not expire 31 days after execution. He claims the contract was ambiguous and therefore should be construed against the trustee who drafted it. Judge Hodges was correct in his ruling that the contract was clear and unambiguous.

Anderson testified to his extensive experience in real estate matters and his knowledge of the importance of the clause requiring the completion of the survey within 21 days. The contract clearly stated Appellant bore the responsibility of obtaining the survey and had 10 days thereafter to reject the contract.

■ Indeed, Appellant does not argue it was not his responsibility to obtain the survey. Instead, he argues that Owen, the seller's agent, took on the task of obtaining the survey. Thus, under the equities of the situation, Appellant would have the Court hold the estate liable for the actions of Owen.

Appellant further claims the lack of a "time is of the essence" clause in the contract meant the parties could extend past any deadline contained within the contract.

The Court will not address such arguments because they overlook one essential fact: Anderson admitted at the hearing that he became disillusioned with the contract before he ever received a survey. He determined to terminate the contract without regard to the clause which gave him that right upon receipt of the survey and the opportunity to view the land as surveyed. That clause is therefore irrelevant and under the other terms of the contract, Appellant's termination of the contract was not warranted or allowed. He simply breached the contract because he decided to withdraw from the deal. The Bankruptcy Court's ruling was based on this factual finding and is clearly correct.

### 4. The Bankruptcy Court erred in finding that the trustee was entitled to the earnest money as damages because he did not prove damages as required under North Carolina law.

■ The Court has combined issues four and five. Appellant argues it was error for the Bankruptcy Court to award attorneys' fees to the trustee in connection with the breach of contract because the same is not statutorily mandated in North Carolina. He also claims the trustee failed to adequately prove damages since there was no testimo-

ny of the difference in value between the two contracts.

Again, Appellant has not presented accurately the true facts involved. Judge Hodges stated:

I think the measure of damages is provided in the contract and that's ten thousand dollars and that's as far as you need to look. However, the trustee has only sought nine thousand and two hundred.... I think the trustee is entitled to ten thousand under the contract, and for that reason I think that requiring specific proof of exactly—because there is nothing in this contract that says what elements should make that up. It simply provides that that is what happens if there is a breach. I find there is a breach and that under paragraph one of the standard provisions, the escrowed ten thousand dollars would become the property of the trustee, but will require the trustee keep only its actual expenses as it is set out and return the balance to Georgia Neurological [sic].

Transcript of July 1, 1993, Hearing at 91–92. The Bankruptcy Court further stated that under North Carolina law, the issue of attorneys' fees did not apply because there was a liquidated damages provision in the contract. *Knutton v. Cofield,* 273 N.C. 355, 361, 160 S.E.2d 29, 34 (1968) ("**The phrase 'liquidated damages' means a sum stipulated and agreed upon by the parties, at the time of entering into a contract, as being payable as compensation for injuries in the event of a breach ...** *Liquidated damages* **are a sum which a party to a contract agrees to pay or a deposit which he agrees to forfeit, if he breaks some promise, and which, having been arrived at by a good-faith effort to estimate in advance the actual damage which would probably ensue from the breach, are legally recoverable ... if the breach occurs**"); *see also, Brenner v. Little Red Sch. House, Ltd.,* 302 N.C. 207, 214, 274 S.E.2d 206, 211 (1981). Because the trustee chose to recover only his attorneys' fees, the Court concluded that it was only equitable to return the balance to Appellant.

Thus, it was unnecessary for the trustee to present evidence of the actual damages (al-

though the Court finds such evidence was presented from its review of the record). Moreover, it is irrelevant that the trustee only desired that portion of the damages that would cover attorneys' fees. The Court could only award liquidated damages as provided for in the contract, regardless of how the trustee phrased his request for damages. It is patently clear that Appellant understood the liquidated damages portion of the contract since that is exactly the clause on which he based his request for relief.

## IV. ORDER

**IT IS, THEREFORE, ORDERED** that this appeal is hereby **DISMISSED** and the Order of U.S. Bankruptcy Court Judge George R. Hodges, entered July 8, 1993, is hereby **AFFIRMED.**

This matter is remanded to Bankruptcy Court for such further proceedings as the Bankruptcy Court may determine necessary.